### BLACKSTONE MANUFACTURING COMPANY *vs.* INHABITANTS OF BLACKSTONE.

Worcester.    October 3, 1911. — January 8, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DECOURCY, JJ.

*Water Rights.    Tax*, Assessment.    *Conflict of Laws.*

It having been decided at a previous stage of this case in a decision reported in 200 Mass. 82, that the value for purposes of taxation of land in this Commonwealth adjoining the boundary line of Rhode Island, through which flowed a river with a fall in both States furnishing a valuable water power which the petitioner applied in a power house erected by it in Rhode Island, should be determined in reference to any and all uses to which it was adapted, including the furnishing of power to be used on the petitioner's wheels in Rhode Island, and a rescript having issued accordingly, the case was recommitted to an auditor, who made a report in accordance with the principles of law stated in the rescript, and, a judge of the Superior Court having made findings of fact and rulings of law in accordance with such supplemental report of the auditor, and having reported the case for determination by this court, it was *held*, affirming the former decision, that judgment should be entered in accordance with the auditor's supplemental report.

On a petition appealing from a refusal of the assessors of a town to abate a tax, brought against the town by a corporation owning a parcel of land which

was partly therein and partly on the other side of the boundary line between Massachusetts and Rhode Island and which contained a water power privilege in both States which the petitioner applied to wheels in a power house in Rhode Island, where the issue is, what is the proper basis of valuation of the property to be taxed in Massachusetts, the law of Rhode Island with relation to mills and mill privileges is not material.

In determining what valuation for the purposes of taxation should be placed upon so much of the property of a manufacturing corporation owning a parcel of property which is on both sides of the boundary line between this State and Rhode Island as is in this State, the whole parcel containing a water power privilege in both States which the corporation applies to wheels wholly in Rhode Island, it cannot be said as a matter of law that it is improper to use as a determining factor the relative fall of the water in each State.

PETITION, filed in the Superior Court on October 1, 1906, under R. L. c. 12, § 78, on appealing from a refusal of the assessors of the town of Blackstone to abate a tax assessed to the petitioner for the year 1905.

The case was referred to James A. Stiles, Esquire, as auditor, and then was heard upon the auditor's report and the pleadings by *Gaskill*, J., who found *pro forma* in accordance with the findings of fact and rulings of law of the auditor and reported the case for determination by this court, whereupon the decision described in the opinion and reported in 200 Mass. 82 was made. Thereafter the case was recommitted to the auditor. The substance of the auditor's supplemental report is stated in the opinion.

The case then was heard on the pleadings and the auditor's supplemental report by *Hitchcock*, J., who found and ruled in accordance with the report and reported the case for determination by this court, the parties agreeing that, if such rulings and findings were correct, judgment was to be entered in accordance therewith; otherwise, such order and entry of judgment were to be made as to this court might appear to be just and in accordance with the law applicable to the case.

*T. H. Gage*, (*F. F. Dresser* with him,) for the petitioner.

*H. H. Thayer*, for the respondent.

HAMMOND, J. At the former hearing of the case before us it was held (200 Mass. 82) that the principle of taxation adopted in *Boston Manuf. Co.* v. *Newton*, 22 Pick. 22, was not applicable when, as here, a part only of the privilege was in this State.

Upon this point Knowlton, C. J., 200 Mass. 92, uses the following language: "In the present case . . . the land [in Massachu-

setts] is held, with its appurtenances and all its natural qualities, by a single owner. It should be taxed to the petitioner, with all its elements of value. Among these are the right to use the flow of the water in connection with the fall of the stream to produce power, and to sell it for that purpose, either to be used in Massachusetts or to be carried into Rhode Island and used with an additional fall there. The use in Rhode Island is not to be taxed separately, as water power existing and applied there, but all the elements and qualities of the real estate which unite to produce the water power in Rhode Island and which combine to give it value there are to be considered. In determining the value of these features of the real estate in Massachusetts, the uses to which power could be put in Blackstone are to be considered, and the uses to which it is put in connection with the additional fall and the structures in Rhode Island are to be regarded. *Lowell* v. *County Commissioners*, 152 Mass. 372.

"If the value of all such elements, those in Rhode Island, as well as those in Massachusetts, which combine to produce the entire water power at the wheels is ascertained, the inquiry will then be, what part of this value is imputable to the real estate in Massachusetts. The answer to such an inquiry would be in part an estimate, but it would not be unlike estimates that are frequently made in determining the rights of parties."

And the order was that "The findings of the Superior Court should be set aside, and the value of the property in question should be determined, either by a recommittal to the auditor or otherwise, in reference to any and all uses to which it is adapted, including the furnishing of power to be used on the petitioner's wheels in Rhode Island;" and the rescript went accordingly.

In compliance with the rescript the case was recommitted by the Superior Court to the auditor. At the hearing under this order the auditor rightly ruled, against the objection of the petitioner, that he would consider all evidence given at the former hearings before him and any other evidence which the respondent might wish to present upon the value of the village land in question in the light of the former decision of this court. At the hearing it developed that both the parties and the auditor were in error with relation to the amount of head, stated in the former report to be twenty-nine feet, that could be developed from the privilege of the

petitioner at the old mill yard. And he found in accordance with the agreement of the parties that "the head of water capable of development both at the old mill yard in Blackstone, Massachusetts, and at the present location of the wheels in Smithfield, Rhode Island, is the same and amounts to 31.56 feet but this head of 31.56 feet was not used prior to the erection of the power house in Rhode Island in 1904."

The auditor describes the whole mill property in detail, which description with the exception of this error is in all material respects like that given in the former report of this case (see 200 Mass. 85, 86), to which reference may be had.

The case is before us upon a report of the Superior Court, where the case was heard upon the pleadings, the auditor's report and certain requests for rulings presented by the respective parties, these requests being the same as those which had been presented at the hearing before the auditor.

The main question is whether, either in the rule adopted by the auditor and followed by the court, or in the method of its application to the circumstances of this case, there was error in law. Upon this matter the auditor reports as follows:

"I find that the dam, pond above it, the river with land on both sides of it, and its fall of 13.88 feet all in Massachusetts furnish an opportunity for the economical development of a separate privilege and which separately would be of value.

"I find that the river, with the land on both sides of it in Rhode Island, together with its fall of 17.68 feet, furnish an opportunity for the economical development of another separate privilege, which likewise would separately be of value. Neither of these privileges were actually developed on May 1, 1905, nor had they ever been so developed as separate privileges.

"Evidence of the value of these separate privileges was offered by the petitioner upon which evidence I can find the value of these separate privileges in each State and the value of the 'increment of combination' so called of them but I have made no finding thereon.

"I find and rule, however, that the entire property in both States belonging to the petitioner and used by it in developing water power, constitute together but one privilege, a unit which is of greater value than the sum of the values of the two separate privi-

leges just described; that the power of the water can be applied either in the old mill yards 'A B C' situated in Blackstone, Massachusetts, or at the new power house situated in Smithfield, Rhode Island; that on May 1, 1905, the entire power of the water, capable of economical development at this privilege, was actually applied in Rhode Island, and that whether applied in Massachusetts or in Rhode Island the agreed head of 31.56 feet is made up of the fall of 13.88 feet of the river in Massachusetts and of the 17.68 feet of the river in Rhode Island, and whether used in one State or the other, both of these falls are necessary to create the head of 31.56 feet, which is the head belonging to petitioners' privilege and utilized by it. I further find that the general method of utilizing this entire privilege which was adopted by the petitioner, was the most advantageous and economical development that could be adopted whether the water was applied in Rhode Island or Massachusetts; and that on May 1, 1905, the most advantageous and economical method of then utilizing the privilege was the method then actually used, any other use necessitating an expenditure of a large amount of money.

"A. I find that the fair cash value of the petitioners' entire privilege situated both in the town of Blackstone, Massachusetts, and Smithfield, Rhode Island, was on May 1, 1905, $140,000. This sum represents the fair cash value, the sum for which it would exchange for in cash on May 1, 1905, in view of all the purposes for which it was naturally adapted. The privilege thus valued includes the land of the petitioners on both sides of the Blackstone River situated in the States of Massachusetts and Rhode Island, the dam, canals, and other structures (but not the power house), land under the same, the pond, and flowage rights and sufficient land to enable the owner to avail himself of the opportunity afforded by the situation, situated as they are with the flow of water, the fall in the river, and all those things which are necessary to enable the owner to make use of his opportunity and create a valuable water power, and with their capacity to 'hold the water of the river and create power.'

"The value of the 61⅜ acres, none of which, as appears by my former report, was situated under the water or other structures used in connection with this privilege or used in connection with them, is not included in this value.

"I have considered the original cost of the structures, the replacement cost, the amount of the use, and the fact that such use was of a profitable nature as evidence but have not adopted them as a test.

"I find there is no method generally accepted by engineers by which the value of a privilege may be apportioned between its separate parts.

"I have separately valued that part of the petitioners' privilege situated in Massachusetts as described in the assessment, viz.: 'Village land and privileges, including dam and other structures for the development of water power' and find its fair cash value as heretofore defined, to have been upon May 1, 1905, $90,225.

"In arriving at this value I have revalued the village land 61⅜ acres, none of which was necessary to the enjoyment of the privilege as used May 1, 1905, with reference to all the buildings thereon and in use together and with reference to its location near the privilege herein described and to all the reasonable possibilities due to its location, and find its fair cash value on May 1, 1905, was $30,025. None of this 61⅜ acres, village land is included in the privilege heretofore valued and no part of the value ($30,025) assigned to said village land is included in the ($140,000) assigned as the value of the entire privilege.

"I have heretofore found, as requested by the petitioners, that two separate privileges could be carved out of the entire privilege owned by petitioner and that the entire privilege, i. e. the combination of these two is of greater value than the sum of the two separate ones. . . .

"I rule that the State cannot authorize nor the assessors of Blackstone assess a tax upon any property lying outside the State, but the petitioners' property in both States was one single privilege and in arriving at the fair cash value of that part of this privilege lying within the State of Massachusetts, I find and rule that the fair cash value of this entire privilege is something more than the aggregate of the values of its separate parts operated separately. It is the aggregate of those values plus whatever value if any may be due to combining these parts into a larger whole; that each part of the privilege both gives to and receives from each other part some value; that it may fairly be said each part of the privilege contributes to the whole, not merely the value arising from

a separate development but a value based on the proportion that it bears in some respect to the whole or to some factor of the whole; that the principal factor in the entire privilege common to both States and the thing without which all else is useless, and the structures valueless, is the fall in the river and the opportunity thereby conferred upon the owner of the shore of the river within the limits of the privilege to create a water power; that without this fall in the river caused by the declivity thereof in Massachusetts and the fall in the river in Rhode Island caused by the declivity thereof, and the ownership of the shore of the river in both States, the privilege as it existed on May 1, 1905, was impossible; that each State is entitled to consider as within its territorial jurisdiction and subject to its taxes a proportionate part of the value due to the development of the entire property as a single privilege, equal to an amount which bears the same proportion to the value of the entire privilege as the fall in the river in Massachusetts bears to the entire fall in the river belonging to the privilege and not including in said value any property in the other State.

"I have therefore apportioned the value of the entire privilege, viz.: $140,000.00, between the two States, found the value of the Massachusetts portion to be $60,200.00, and to this amount add the value of the village land (viz.: $30,025.00), making the value of the 'privilege with dam and other structures for the development of water power' as heretofore stated to be $90,225.00.

"I have considered the land, dam, structures for the production of water power, the flow of the water, and canals and water ways by which the water of the river is taken across the tangent aforesaid to be applied on the wheels in Rhode Island, the land, the right to set back the flow of water in the river in connection with the fall thereof in order to produce power and to sell it, either to be used in Massachusetts or to be carried into Rhode Island, the uses to which power could be put in Blackstone or elsewhere, its location with reference to the surrounding land and especially its value with reference to the value which it contributes to the value of petitioners' entire property, but have not otherwise included in the value of the Massachusetts privilege, any portion of the value of the petitioners' property in Rhode Island."

It thus appears clearly that in considering the value of the privilege belonging to the land in Massachusetts the auditor took

into consideration its value as a part of the whole privilege as developed in Rhode Island. The rule thus adopted by him and followed by the court was in substance the same as that prescribed by this court as hereinbefore stated, namely: "In determining the value of these features of the real estate in Massachusetts, the uses to which power could be put in Blackstone are to be considered, and the uses to which it is put in connection with the additional fall and the structures in Rhode Island." It appears from this second report of the auditor that the law of Rhode Island with relation to mills and mill privileges is substantially the same as in this Commonwealth, but he rightly ruled that the Rhode Island law is not material to the present issue. So far as refers to the rule to be adopted the case stands in all material respects the same as when it was here before. For reasons stated in the former opinion we remain satisfied with it. The rule adopted by the auditor and the court was correct.

It is argued however by both parties that in applying the rule to the circumstances of this case there was error in that the relative fall of the water in each State was made the determining factor. The petitioner contends on its part that the special part of the unit privilege which is contributed by the privilege belonging to the land in Blackstone is incapable of estimation, and that in any event the valuation of the land and structures in Massachusetts based upon their participation in the value of the whole single water power development is necessarily a valuation of property lying in Rhode Island, and any valuation and tax thereon so made is in violation of the "due process clause of the Fourteenth Amendment of the United States Constitution." The respondent on its part, while contesting the soundness of the petitioner's contentions, urges that in making use of this water power the structures including dam and canals were in the main erected upon the land in Massachusetts, and in making use of them for seventy-five years in the manner stated by the auditor the petitioner has straightened the course of the river, taking it out of Rhode Island, substituting for the natural course and fall the present artificial course and fall, and that so long as these structures remain they should be taxed there and that the value of the land should be fixed regardless of whatever fall there may be in the river in Rhode Island before its return to Massachusetts.

But neither contention seems to us sound. It cannot be ruled as matter of law either that it is impossible to make a fair estimate of the relative value of that part of the water privilege situated in Massachusetts sufficiently accurate for purposes of assessment, nor that upon all the evidence the auditor has wrongly applied the rule.

The petitioner made thirty requests for rulings and the respondent made twenty-two. Some of them were given and some refused. It is unnecessary to go over them further in detail. They have been considered and no error appears in the manner in which - the court dealt with them.

*Judgment for the petitioner in the sum of $791.50, with interest thereon from October 30, 1905.*