CROCKER–McELWAIN COMPANY *vs.* ASSESSORS OF HOLYOKE.

CHEMICAL PAPER MANUFACTURING COMPANY *vs.* SAME.

Suffolk.    February 6, 1936. — January 4, 1937.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Tax*, Assessment, Local, Mill site. *Water Rights. Words,* "Restrictions."

In valuing as real estate a mill site and an appurtenant mill power for purposes of taxation and determining how much the value of the site was enhanced by the power, where it appeared that both were sold to the owner and conveyed to him by a deed from a water power company which contained recitals in substance that "for the preservation and support of the" power "and to secure a fund to indemnify the" grantee for certain expenses entailed if the company neglected to make repairs, "part of the consideration" of the sale "should be paid or secured to" the company "in the form of a reservation of rent," to which both the site and the power should be subject and which should be paid annually forever, assessors of taxes were not required to consider the obligation to pay rent.

TWO APPEALS, filed in the Supreme Judicial Court for the county of Suffolk on October 30, 1935, by taxpayers from decisions by the Board of Tax Appeals.

*P. Nichols,* (*P. Nichols, Jr.,* with him,) for the taxpayers.
*R. L. Davenport,* for the board of assessors.

FIELD, J.  These two cases come before us on appeals by the respective taxpayers from decisions of the board of tax appeals. G. L. (Ter. Ed.) c. 58A, § 13, as amended by St. 1933, c. 321, § 7.  Each taxpayer was assessed on real estate in the city of Holyoke for the year 1932, and made an application to the assessors for an abatement.  The assessors failed to act on such applications within four months after they were filed and thereafter these taxpayers appealed to the board of tax appeals. G. L. (Ter. Ed.) c. 58A, § 6, as amended by St. 1933, c. 167, § 4.  The board of tax appeals granted an abatement to each taxpayer — $546.04 to the Crocker–McElwain Company, and $1,983.22 to the Chemical Paper Manufacturing Company.  From these decisions of the board the taxpayers respectively appealed to this court and now contend that they are entitled to larger abatements than those granted.

Facts found by the board of tax appeals as of April 1, 1932, include the following: Each taxpayer owns land in the city of Holyoke, not contiguous to the Connecticut River, which is here referred to as a mill site.  On these sites are mill buildings and hydraulic structures.  The properties are used in the manufacture of paper.  "Appurtenant to each of the two mill sites is a right to use a certain amount of water for the generation of power, established by indentures with the Holyoke Water Power Company under which the mill sites and water power rights were conveyed, and a further right to use a certain amount of water for process, established by other indentures.  This company owns a dam across the Connecticut River and a system of canals running through the city in three levels.  Between the different levels there are mill sites, conveyed by the company to various mills with appurtenant water power privileges.  The water in the canals passes through flumes, water wheels and raceways on the mill sites from one level to another, finally emptying into the river again below the dam.  The water power developed by the company's hydraulic system is utilized by the grantees of water power

privileges at the mill sites, and also by the company itself. . . . Mill power, is defined as the right to draw from the nearest canal and through the land to which the mill power is annexed 38 cubic feet of water per second when the head is 20 feet and inversely proportionate quantities as the head varies. Permanent mill powers were computed on the basis of the low water flow, of the Connecticut River. The total number of permanent mill powers owned by grantees is 177.2 and the Holyoke Water Power Company itself uses 13.09 additional."

"The indentures between the Holyoke Water Power Company and the . . . [taxpayers] conveying the mill sites and granting permanent mill powers contain terms and conditions set forth in a document, called 'Proposals,' annexed to and made a part of each indenture. Among these terms and conditions it is provided that the company shall forever maintain the dam and keep the canals in good repair and that the land constituting the mill sites shall not be used except for mills. Article V thereof is in part as follows: 'In order to continue in the grantors an interest in common with the grantees, for the preservation and support of the mill powers which may be granted, and to secure a fund to indemnify the grantees for expenses which may be incurred by them for making repairs, if the grantors should improperly neglect to make them, it is proposed that part of the consideration of every sale, and all that is to be allowed the grantors for repairs, etc., by them assumed, should be paid or secured to them in the form of a reservation of rent. *It is therefore declared*, that each mill power, with the land to which it is annexed, shall forever be subject to a perpetual annual rent . . .; which rent is to be paid in yearly payments forever . . . .' And the indentures provide that the conveyance of the land together with the mill powers is in consideration of money and other consideration paid and of the rent reserved and of the other agreements of the grantees, and that the granted premises are conveyed subject to the agreements, terms and conditions in the proposals obligatory upon the grantees, 'and among other things yielding and paying to the said

Holyoke Water Power Company, and its successors and assigns forever, for each mill power above granted . . . the yearly rent' as therein specified.

"The water power belonging to the mill site of the Chemical Company is 16 permanent mill powers, and an annual rent is reserved of $450 a mill power. At the Crocker Company mill site the water power is 10 permanent mill powers and the annual rent is $1,500 a mill power. . . . The assessors in valuing these mill sites added to the square foot value of the land, as estimated by them, a value of $10,000 for each of the 16 mill powers at the Chemical Company's site and a value of $12,000 for each of the mill powers at the Crocker Company's mill site. In thus valuing the mill powers they did not take into consideration the annual rents paid for them. They did not value the right to process water."

Copies of indentures and the "proposals" incorporated therein are made a part of the record on appeal. The "proposals" contain provisions for reëntry by the grantor of the mill sites and appurtenant mill powers for non-payment of judgments for unpaid rent.

The board of tax appeals ruled that "the fair cash value we have to find is the value of the land with water power without considering the obligation to pay rent," and "that the water power rights enhanced the value of the mill sites, omitting from consideration the rents reserved, by $120,000 in the case of the Crocker Company's mill site and by $160,000 in the case of the Chemical Company's mill site."

The taxpayers state that the sole question raised by their appeals is "whether, as a matter of law, the Board might, in valuing these mill sites, consider the enhancement in value due to the right created by indenture to enjoy the use of the water power without considering the obligation to pay rent created by the same indenture."

It is not disputed that the so called mill powers are valid rights appurtenant to the mill sites and that in valuing such mill sites as real estate for the purposes of taxation any enhancement of the value thereof by reason of such

appurtenant rights is to be considered. The narrow question for decision is whether in determining the amount of such enhancement the obligation to pay rent is to be considered. This question must be answered in the negative.

Principles governing taxation in a situation like the present were stated in *Essex Co.* v. *Lawrence*, 214 Mass. 79, 90–91, though in that case the tax upon the water power company — the Essex Company — was in question, rather than, as here, taxes upon grantees of mill sites and mill powers appurtenant thereto. In that case it was said, "The Essex Company as the owner of the entire water power development with contiguous land had a right to carve its property by selling fractional parts as sites for mills with power rights appurtenant and by retaining other parts upon which are located the dam and canals, and to assume by contract with the purchasers of the sites the burden of maintaining the dams and other structures, by which the capacity for power of the river water might be made available in perpetuity. . . . When the mill powers became by use and by conveyance or contract parcel of the several mill sites, they were properly taxable with them, not as distinct and independent items of property, but as increasing the value of the land. . . . If the Essex Company had retained ownership of its original real estate unit, its value would have comprehended the land, its capacity for utilizing the force of the river for power and the structures by which this capacity had been developed. Assuming that this was the most valuable use to which the land could be put, these elements in combination would have made up the entire value of the land. Since it has divided its real estate unit by selling some of its land and incorporating therewith a part of the capacity of the river to produce power, the land value of that which is left must be diminished. If it has acquired as a part of these sales valuable rights to rent, these do not constitute real estate. The capacity of its land for improvement by dams and canals to utilize the fall of the river for power was single; whatever part of it is treated as annexed to the mill sites

must be subtracted. In reaching this result, the enhancement of value of the land occupied by the several mills by reason of the mill powers in use annexed to them must be considered. . . . It follows that so far as the capacity of the water of the river to produce power developed by the structures of the Essex Company has been assessed by enhancement of the several mill sites, to the same extent its land and structures should be diminished in the valuation for taxation which otherwise would be placed upon them." An earlier case, *Lowell* v. *County Commissioners*, 6 Allen, 131, was decided in accordance with these principles.

The conclusion to be drawn from these cases is that the land and the structures thereon of a water power company with the water power rights originally appurtenant to such land are to be valued as a unit and this value is to be diminished by the amount by which the values of mill sites granted by the company are enhanced by the mill powers made appurtenant thereto by grant from the water power company, so that the whole value of the water power rights will be reached by the real estate tax as enhancing either the values of the mill sites or the value of the land remaining in the water power company. Moreover, the rights of the water power company to receive rent for the mill powers appurtenant to the mill sites are not to be considered in valuing the land of such company. The court said of such rights in *Essex Co.* v. *Lawrence*, 214 Mass. 79, 91, "these do not constitute real estate." By necessary implication the obligations of the owners of the mill sites to pay rent for such mill powers are not to be considered in determining the extent of the enhancement of the values of such mill sites by reason of such mill powers. Otherwise the full value of the water power rights would not be reached by the real estate tax.

The taxpayers contend, however, that in spite of the statement in *Essex Co.* v. *Lawrence*, 214 Mass. 79, 91, in respect to the rights of the water power company to receive rents for mill powers, the method of valuing the real estate of the Essex Company used by the commissioner in

that case, and approved by this court, involved a consideration of such rights in valuing both the real estate of the water power company and the mill sites with appurtenant water powers of other owners. Neither an analysis of the commissioner's report nor anything in the opinion of the court supports this contention. It is true that the commissioner, in fixing the value of the water power plant of the Essex Company with the whole of the water power rights originally appurtenant thereto, considered, with other evidence of value, the productive power of the plant including the gross annual revenue from the mill powers. But any element of such rental value of the mill powers which was included by the commissioner in the whole value of the water power rights was deducted from the value of the real estate of the water power company when the amount of the enhancement of value of the mill sites by such mill powers was deducted, unless the amount of such enhancement had itself been reduced by reason of the obligations of the owners of such mill sites to pay rent. The report of the commissioner does not imply that such a reduction was made. The finding that the gross annual revenue received by the owner of the water power plant for one hundred forty-two and one twelfth mill powers — without deduction for the expenses of maintaining the plant — amounted to $54,000 is at least consistent with the finding that the amount of the enhancement of the value of the mill sites by reason of the appurtenant mill powers was $568,333, though no reduction of the amount of such enhancement was made on account of the obligations of the owners of such mill sites to pay rent for the mill powers, particularly since such rent was paid in part for the maintenance of the water power plant and not merely for rights in the "part of the capacity of the river to produce power" appurtenant to the mill sites.

The conclusion that the obligation to pay rent is not to be considered in valuing the mill sites of the taxpayers is in accordance with the principles governing taxation of real estate generally. Real estate is assessed to the owner or person in possession thereof. G. L. (Ter. Ed.) c. 59,

§ 11. See St. 1933, c. 254, §§ 29, 66.  The tax, however, is assessed upon the whole real estate on its value as a unit and not upon the interest therein of the person assessed. *Worcester* v. *Boston,* 179 Mass. 41.  *Donovan* v. *Haverhill,* 247 Mass. 69, 71–72.  In general the tax to whomsoever assessed is a lien upon the whole estate, and a purchaser at a tax sale obtains a "new and unrestricted" title to the whole estate "independent of all incumbrances and paramount to all existing interests." *Davis* v. *Allen,* 224 Mass. 551, 552.  See G. L. (Ter. Ed.) c. 60, § 43.  The lien is commensurate with the tax.  *Curtiss* v. *Sheffield,* 213 Mass. 239, 244.  *Collector of Taxes of Boston* v. *Revere Building, Inc.* 276 Mass. 576, 578.  These principles are applicable, for example, to leased real estate (*Donovan* v. *Haverhill,* 247 Mass. 69, *Newton Building Co.* v. *Commissioner of Corporations & Taxation,* 285 Mass. 471, 473–474), mortgaged real estate — if a statement of the mortgagee's interest has not been filed, see G. L. (Ter. Ed.) c. 59, §§ 11–14 — (*Worcester* v. *Boston,* 179 Mass. 41), land and buildings thereon owned by different persons (*McGee* v. *Salem,* 149 Mass. 238, *Newton Building Co.* v. *Commissioner of Corporations & Taxation,* 285 Mass. 471, 474) and real estate in which the present owner has only a life interest. *Bates* v. *Sharon,* 175 Mass. 293.  A fortiori these principles apply where the owner of real estate has not paid the agreed consideration for the purchase thereof but remains under an obligation to make further payments on account of such consideration.

From the provisions of the "proposals," which, with certain modifications not here material, are incorporated in the indentures, and from the provisions of the indentures themselves, it appears that "part of the consideration" for each sale by the water power company of a mill site and mill powers appurtenant thereto was "paid or secured" to the grantor in the form of a reservation of rent.  It follows from what has been said that the obligation of an owner of a mill site to pay rent, regarded as consideration for such sale or security therefor, does not affect the amount by which the value of the mill site, for the purpose of taxation,.

is enhanced by reason of the appurtenant mill powers unless there is something in the nature of the reservation of rent which gives it this effect.

The taxpayers acquired from the Holyoke Water Power Company directly, or through mesne conveyances, title in fee to the mill sites and the mill powers appurtenant thereto, subject to certain so called "conditions and restrictions" and to the payment of the rent reserved, with the right in the Holyoke Water Power Company to reënter the granted premises for certain breaches of covenants and particularly for nonpayment of the rent reserved after recovery of judgment for unpaid rent. By the terms of the "proposals" and the indentures the granted premises, and not merely the appurtenant mill powers, were subject to the reservation of rent. In the case of a lease for a term of years, the leased real estate may be assessed either to the lessor as owner or to the lessee as the person in possession, but the interests of lessor and lessee are not separated for the purpose of assessment. The real estate as a whole is assessed and the reservation of rent for the leasehold interest, except as the amount of such rent may be evidence of the value of the entire estate (see *Levenson* v. *Boston Elevated Railway*, 191 Mass. 75), does not affect the amount for which such real estate as a whole is assessable. *Donovan* v. *Haverhill*, 247 Mass. 69. In the present case, however, the grantees of the mill sites and appurtenant mill powers not only were in possession but also were the owners thereof within the meaning of the taxation statutes, and they were taxable on such mill sites and appurtenant mill powers as real estate separate from the water power plant. In this aspect the situation is not analogous to that of real estate leased for a term of years. But it does not follow that there is a further separation between the mill sites with appurtenant mill powers and the rent reserved, or that in this aspect the situation is not analogous to that of leased real estate. It was said in *Essex Co.* v. *Lawrence*, 214 Mass. 79, 91, in respect to a situation similar to that in the present case, that the rights of the grantor to rent "do not constitute real estate." However, even if the rent reserved can be

regarded as so charged on the mill sites and appurtenant mill powers as to constitute an interest in real estate, like a ground rent or rent charge (see *Whiting Paper Co.* v. *Holyoke Water Power Co.* 276 Mass. 542, 546), the general principle that the tax is assessed on the real estate as a whole, irrespective of the interests therein, is applicable. See *Penick* v. *Atkinson,* 139 Ga. 649, 654; *Robinson* v. *County of Allegheny,* 7 Penn. St. 161, 164. See also *J. W. Perry Co.* v. *Norfolk,* 220 U. S. 472, 478–479. Compare *Adams* v. *Bucklin,* 7 Pick. 121, 131. In the Georgia case it was said of the owner of real estate that it "is true that his property is burdened with a ground rent, but that gives him no more right to call upon the owner of the ground rent for contribution than, if the property be incumbered by mortgage, to call upon the mortgage[e] to share in the payment of the tax assessed upon the property." The rule for the taxation of mortgaged real estate referred to is like that which was in force in this Commonwealth before the statutes provided for or permitted the separation of the interests of the mortgagor and the mortgagee in such real estate. See *Hammond* v. *Lovell,* 136 Mass. 184; *Worcester* v. *Boston,* 179 Mass. 41. No statute specifically authorizes such separation of interests in rent reserved and in the real estate out of which it issues.

The taxpayers, however, rely on the law governing the taxation of land subject to, or having the benefit of, easements and restrictions. G. L. (Ter. Ed.) c. 60, § 45, provides in part, by a provision first enacted by St. 1905, c. 193, that upon a sale of land for nonpayment of taxes "the premises conveyed shall . . . be subject to and have the benefit of all easements and restrictions lawfully existing in, upon or over said land or appurtenant thereto." Inferentially, since the tax lien must be commensurate with the tax (*Curtiss* v. *Sheffield,* 213 Mass. 239, 244), the real estate is to be valued, for the purpose of taxation, subject to, and with the benefit of, such easements and restrictions. Water power rights, like the mill powers here in question, have been referred to as easements. See *Holyoke Water Power Co.* v. *Whiting & Co. Inc.* 276 Mass. 528, 534.

But, whatever may have been the law with respect to easements and restrictions generally before the enactment of St. 1905, c. 193 (see *Hunt* v. *Boston*, 183 Mass. 303), such water power rights, even prior to such enactment, were reached for the purpose of taxation — where no conflict of jurisdiction arose (see *Blackstone Manuf. Co.* v. *Blackstone*, 200 Mass. 82; *S. C.* 211 Mass. 14) — through the enhancement of the value of the land to which they were made appurtenant, and the value of the land subject to such rights was correspondingly diminished. *Lowell* v. *County Commissioners*, 6 Allen, 131. Consequently, so far as the mill powers themselves are concerned, it is not material whether they are within the provisions of G. L. (Ter. Ed.) c. 60, § 45.

The values of the mill sites and appurtenant mill powers, however, are not to be diminished by reason of the obligation to pay rent unless by force of G. L. (Ter. Ed.) c. 60, § 45. The reservation of rent is not an integral part of the mill powers considered as easements or other interests in land, even if the covenants of the grantor with respect to the mill site and appurtenant water powers and the covenant of the grantee to pay rent are dependent and a breach of the grantee's covenant might result in the forfeiture of its interest in such mill site and appurtenant mill powers. The reservation of rent, before such a forfeiture, is at most a contractual obligation of the grantee to pay consideration for the mill site and appurtenant mill powers or for the occupation and use of them and an encumbrance thereon securing such payment. See *Whiting Paper Co.* v. *Holyoke Water Power Co.* 276 Mass. 542, 547–548. Apart from this statute — and from other statutes not here applicable (see, for example, G. L. [Ter. Ed.] c. 59, §§ 11–14) — encumbrances, as already stated, are disregarded in the taxation of the real estate subject thereto. Moreover, G. L. (Ter. Ed.) c. 60, § 45, does not apply to all encumbrances. It is limited to "easements and restrictions." Clearly a reservation of rent is not an easement. And the word "restrictions" as used in the statute means restrictions affecting the *use* of the land. *Donovan* v. *Haverhill*, 247 Mass.

60, 72. *Grasselli Chemical Co.* v. *Assessors of Boston*, 281 Mass. 79, 82. See *Lodge* v. *Swampscott*, 216 Mass. 260. This is the natural meaning of the word when used, as here, in reference to land and in conjunction with the word "easements." See *Crocker* v. *Cotting*, 173 Mass. 68, 70; *Shade* v. *M. O'Keefe, Inc.* 260 Mass. 180, 183. It is not to be extended to include liens or other equitable or legal charges imposed on land to secure the payment of money or the performance of other obligations. The language of the statute, which must be construed in connection with the preëxisting law governing taxation (see *Duggan* v. *Bay State Street Railway*, 230 Mass. 370, 374), shows no intention on the part of the Legislature to make such a far reaching change in long established principles governing taxation. A reservation of rent is not a restriction on the use of the land out of which such rent issues. Consequently the taxpayers are not aided by this statute.

The taxpayers urge that the law governing the sale of land for nonpayment of taxes, and particularly the principle that the tax lien is commensurate with the tax, demonstrates that the obligation to pay rent should be considered in determining the extent of the enhancement of the value of a mill site by reason of the appurtenant water powers since, if this obligation is not so considered, the mill site with appurtenant water powers must be sold free of such obligation. This line of reasoning does not lead to the conclusion that the obligation is to be considered. Such reasoning is applicable in some degree to all cases, not specially covered by statute, where, according to the general principle, the tax is assessed upon the entire estate and not upon the interest therein of the person assessed. The nature of the rights here involved creates no insuperable obstacle to a sale for nonpayment of taxes of a mill site and appurtenant water powers free of the obligation to pay rent. If there is anything in the nature of these rights to render the application of the general principle peculiarly unfair an exception from its application was a matter for legislative action. The court cannot by decision create

such an exception.  However, no apparent harm would result to any person other than the owner of the water power plant from the fact that a mill site and appurtenant water powers sold for nonpayment of taxes was sold free of the obligation to pay rent.  And, so far as the rights of the owner of the water power plant are merely contractual, such rights cannot affect the method of taxing the real estate.  See *Hamilton Manuf. Co.* v. *Lowell*, 274 Mass. 477, 480–481.  But if the water power company has an "interest in land" in the mill sites and appurtenant mill powers — which includes "every kind of claim to land which can form the basis of a property right" (*Union Trust Co.* v. *Reed*, 213 Mass. 199, 201, *Jenney* v. *Tilden*, 270 Mass. 92, 95) — by redeeming the land sold it could protect itself against the continued existence of water power rights in the owner of a mill site free from any obligations on the part of such owner to pay rent therefor.  G. L. (Ter. Ed.) c. 60, § 62. St. 1933, c. 325, § 10.

It is not true, as argued by the taxpayers, that the conclusion here reached results in taxing value which does not exist.  It results in taxing the entire value of the water power rights through the enhancement of the value of the real estate to which they are appurtenant, and in apportioning the value of such water power rights between the water power plant and the mill sites.  If the apportionment does not conform to the actual pecuniary interests of the owner of the water power plant and the owners of the mill sites it is because the latter have not paid full consideration for the real estate taxed to them as owners — a circumstance ordinarily immaterial in determining the value of real estate for the purpose of taxation.  On the other hand, the contention of the taxpayers, if adopted, would result in a part of the value of the water power rights escaping taxation as real estate.  See *Essex Co.* v. *Lawrence*, 214 Mass. 79, 91.

It follows that in each case the decision of the board of tax appeals was right.  In accordance with these decisions an order is to be entered in the case of the Crocker–McElwain Company granting abatement in the sum of $546.04

and an order is to be entered in the case of the Chemical Paper Manufacturing Company granting abatement in the sum of $1,983.22.

*So ordered.*