LEONARD F. LAWRENCE *vs.* CITY OF BOSTON.
WILLIAM B. FOWLE *vs.* SAME.

Suffolk. November 9.—10, 1875. WELLS & ENDICOTT, JJ., absent.

On the trial of a petition by the lessee of a part of a building, for the assessment of damages occasioned by the taking by a city of land, on which the building stood, to widen a street, it appeared that the owner of the estate surrendered the entire estate to the city by a deed in which he covenanted to indemnify the city against all claims for damages, and that in pursuance of this agreement he defended the action. *Held,* that declarations by him as to the value of the lease, made after notice to him of the taking and before his agreement with the city, were not admissible in evidence except to contradict him.

On the issue of the value to the lessee of rooms in a building which had been taken by a city to widen a street, it is within the discretion of the judge presiding at the trial to permit a witness who underlets rooms in a building in the vicinity, and who, for this purpose, has informed himself generally of the rents of buildings, to give an opinion as to the value of the lessee's premises, although he has not examined, and is not familiar with, the building in question.

On the trial of a petition under the St. of 1871, c. 382, § 7, by the lessee of a part of a building, for the assessment of damages occasioned by the taking of the land on which the building stood, by a city to widen a street, the jury were instructed in substance that the value of the lease was its market value; that market value meant the fair value of the property as between one who wanted to buy and one who wanted to sell, irrespectively of peculiar circumstances rendering the lease of greater value to the lessee or of a desire on his part to retain the premises. No special objection was taken to this instruction, but the petitioner requested the further instruction that in determining the value of the lease the jury were to consider, among other things, the amounts which persons desiring to take the lease would be willing to give therefor, not excluding the amounts which the petitioner himself would give. The judge stated that he had no objection to giving this instruction with the modification, "if the petitioner is in the market for the lease." *Held,* that the petitioner had no ground of exception to the refusal of the judge to give the instruction without the modification. *Held, also,* that the petitioner had no ground of exception to the refusal of the judge to instruct the jury, as requested by him, that the statute entitled all persons whose property was taken for public uses, to receive damages for the value thereof, that the term "market value" was not used in the statute, and that the lessee was entitled to compensation for any value the property might have other than a market value.

TWO PETITIONS to the Superior Court under the St. of 1871, c. 382, § 7, for a jury to assess damages for the taking by the respondent of the land on which the Boston Post building stood, on the corner of Water Street and Devonshire Street, in Boston, to widen Water Street, the petitioners having a leasehold estate therein. Trial in the Superior Court, before *Putnam,* J., who allowed a bill of exceptions in substance as follows:

The land and building belonged to James H. Beals and others. The petitioner Lawrence held a lease from them of a store on the first story on Water Street, which would terminate November 4, 1878. The petitioner Fowle held a lease from one Apthorp of a room on the second story on Devonshire Street, which would terminate May 1, 1875. Apthorp held a lease from the owners of the same and other premises which would terminate at the same time.

The city determined, April 18, 1873, to widen Water Street by taking a portion of the estate. On March 31, 1873, the owners notified the city that they objected to the proposed widening, and elected to surrender the entire estate to the city. On November 15, 1873, the city determined to take the entire estate for the purpose of the widening. Subsequently the owners settled with the city for the value of the estate, and in consideration of $325,000 paid to them, and of the use of the building till September 1, 1874, and the remission of taxes for that year, the owners conveyed the estate to the city, on April 15, 1874, and in their deed covenanted to indemnify the city against all claims for damages on account of the granted premises or the taking thereof. The owners notified the tenants that they must remove on September first.

It was conceded that in pursuance of this agreement the present suit was defended in fact by the owners of the estate.

At the trial James H. Beals was called as a witness for the petitioners, and testified that he appeared in behalf of himself and other owners before the city authorities during the negotiations which resulted in the settlement with the city. The petitioners then offered to show by this witness that he made representations to the committee that the owners would have to pay large damages to these tenants, and that these rooms could be let for more than the rent reserved in the existing leases, also as to the amount at which the office occupied by Beals, Green & Co. in the building, which office adjoined Lawrence's store, could then be let. The counsel offered this evidence, not as in any way controlling Beals's statements at this trial. He was not asked his opinion as to the value of the leases, but counsel stated that they offered this evidence as admissions heretofore made by the said Beals. The judge excluded the testimony, and the petitioners alleged exceptions.

The respondent called Charles W. Freeland to testify as to his opinion of the rental value of premises occupied by the petitioners. The witness testified that he was lessee under a long lease of a building known as the City Exchange, on Devonshire Street, about one hundred and fifty feet from the corner of Water Street and Devonshire Street, which building he underlet, and that he made it a part of his business to underlet this building, and that he attended to letting tenements not exceeding twenty in that building; that his knowledge of the value of leases outside of his own building was not very extensive; that he was not in the habit of making any inquiries as to what other people were doing; that he had general knowledge of what certain things would rent for per square foot; that for the purpose of letting this building he had informed himself generally of the rents of buildings; that knowledge came to him by the way of people coming to make inquiries, and when he talked about the rent of his building they would tell him what they could hire in such a building for such a price; that he had not sought the knowledge, but it came to him in that way; that he had been consulted a great many times by owners of buildings as to rents, but he could not state any particular territories as to which he was thus consulted, and that he had hired a building for his business on Winthrop Square. It did not appear that the witness had examined the Boston Post building. The petitioners thereupon objected that the witness was not qualified to testify as to his opinion of the value of the petitioners' premises. But the judge permitted him to testify thereto, and the petitioners excepted.

The judge instructed the jury as follows: " The value of the leases is their market value; ' market value' means the fair value of the property, as between one who wants to purchase and one who wants to sell any article, not what could be obtained for it under peculiar circumstances, when a greater than its fair price could be obtained; not its speculative value; not a value obtained from the necessities of another. Nor, on the other hand, is it to be limited to that price which the property would bring when forced off at auction, under the hammer. It is what it would bring at a fair public sale, when one party wanted to sell and the other to buy. The fact, therefore, that one of these lessees, Lawrence, as had been argued by his counsel, did not want

to move, wanted to stay there, would have paid a very large sum to stay there, is not a test of market value, because it is not a case of one who wants to sell and one who wants to buy. If Lawrence had wanted to go out, the question is, what would his lease have brought? Not what it would have been worth to him if he had wanted to stay there, because it may have been of greater value or of less value to him than its value upon the market. That simply determines its value to him, not its market value. The question for you to consider is, if Lawrence wanted to sell this lease, what could he have obtained for it upon the market, from parties who wanted to buy and would give its fair value?" No specific objection was taken to this charge, but the counsel for the petitioners then asked the judge to give this instruction: "In determining the value of the leasehold estate, the jury are to consider among other things the amounts which persons desiring to take the leases would be willing to pay for the same, not excluding from such consideration the amounts which the petitioners themselves would give." The judge stated that he had no objections to giving this instruction, with this modification, "if the petitioners are in the market for the lease; but if they, rather than be turned out, would give more than anybody else, that is not the market value of the lease," and did so give it. The counsel contended that it should be given without the modification; and excepted to the refusal of the judge so to do.

No evidence was offered of any other than the market value of the leases upon either side, or that the petitioners would have been glad to stay if they could do so, or what they would be willing to pay for the leases if they could stay; but the petitioners testified as to the conveniences of the tenements for their purposes, and it was conceded for this trial by the respondent, and the judge so instructed the jury, that in estimating the rental value for the remainder of the term, they might assume that the lease could be renewed at a fair rental.

The petitioners' counsel then asked the judge to give this instruction: "The statute entitles all persons, whose property has been taken for public uses, to receive damages for the value thereof; the term 'market value' is not used in the statute, and t may be that property has value other than a 'market value,'

and for that the tenant is entitled to compensation." The judge declined to give this further qualification of his rulings; and the petitioners alleged exceptions.

*S. J. Thomas*, for Lawrence.

*R. M. Morse, Jr.*, for Fowle. 1. The admissions of Beals, one of the owners, as to the rental value of the premises in question, and those adjoining the same, were competent evidence. The suit was defended by the owners under a covenant to indemnify the city. Upon the question of value, it would have been competent to inquire of the owners as to their opinion. *Dickenson* v. *Fitchburg*, 13 Gray, 546. It was equally competent to inquire as to their declarations as to the same.

2. Freeland was not qualified to testify as to the rental value of these premises. The premises were rooms in a building. Some personal examination was necessary to authorize a witness otherwise qualified to testify as to value. Even in the case of land a certain familiarity with it has been deemed essential. *Fowler* v. *County Commissioners*, 6 Allen, 92. But in respect to rooms personal inspection is especially needed, in order to appreciate properly such essential conditions as the amount of light, manner of fitting up, convenience for various uses, &c. It did not appear that Freeland had examined the rooms in question or had any acquaintance with them. He had "a general knowledge of what certain things would rent for per square foot;" he had informed himself generally as to the rents of buildings, and a part of his business was to let a building in the vicinity. This knowledge and experience may have sufficed to enable him to testify as to these rooms, if he had examined or had been familiar with them, but was not sufficient without such knowledge.

3. The instructions of the court as to the value of the leasehold estates were inaccurate and calculated to mislead the jury, first, in using the term "market value" as synonymous with "value," and second, in a misstatement of the elements to be considered by the jury in determining it. The St. of 1871, c. 382, § 5, provides that in the taking of an entire estate, after surrender to the city, the owner shall receive the "value" thereof. The Legislature, it is believed, has never used the term "market value" in connection with the taking of land, as synonymous with "value." In *Dwight* v. *County Commissioners*, 11 Cush. 201,

203, the court said, " the market value is a near and perhaps the closest approximation to " the true value ; not that it is the same thing. In *Edmands* v. *Boston*, 108 Mass. 535, the Superior Court used the term " market value " as defining the value for which the petitioners were entitled to compensation, and the expression was repeated in the opinion of this court ; but it does not appear that the court intended to sustain the accuracy of the expression. In *Cobb* v. *Boston*, 112 Mass. 181, the expression is also used. With these exceptions, it is believed that there is no case in which this court has held that the terms " value" and " market value," as applied to property taken for public uses, are synonymous. But assuming that the objection to the term " market value " is not well founded, or that it is immaterial, if the jury were instructed accurately or sufficiently favorably to the petitioners as to its meaning, then it is submitted that the instruction was incorrect in excluding from the consideration of the jury the amounts which the petitioners themselves would give for the premises, unless " the petitioners were in the market for the lease." " The value to him . . . . was the measure of his (the owner's) claim to indemnity." Shaw, C. J., in *Patterson* v. *Boston*, 20 Pick. 159, 166. " A fair compensation for the property taken and injury done, ascertained by general rules, is a substitute to the owners for that of which they are deprived." Wells, J., in *Edmands* v. *Boston*, 108 Mass. 544. See *Robb* v. *Maysville Turnpike Co.* 3 Met. (Ky.) 117. " The question for the jury was, what was a proper price, or in other words, what was the value of the land taken ? " Ames, J., in *Pinkham* v. *Chelmsford*, 109 Mass. 225, 228.

The petitioners were entitled to have instructions substantially to the above effect. The jury, in determining the true value of the premises, were bound to consider all the evidence as to the actual demands that existed for them, their adaptation to all persons, including the owners, the opinions of experts and their own general knowledge and experience on the subject. It may be difficult to give an exact definition of the term " value " as it is of " ordinary care." There was, as the petitioners submit, no necessity for elaborating a definition to the extent undertaken by the court. But if the elements of value needed to be stated with greater minuteness than this court has hitherto found necessary,

it is submitted that there is no reason or authority for excluding, as one of such elements, the actual value of the premises, as they were at the time of the taking, to the person from whom they were taken, under the circumstances under which they were taken. The natural and inevitable tendency of the instruction was to impress on the jury that they were to give the tenant only what the lease would bring at a fair public sale, where the party most liable to offer the true value was excluded from the competition.

*G. O. Shattuck & M. Storey*, for the respondent, were not called upon.

GRAY, C. J. Beals was not a party to the record. He defended this suit, not by reason of any relation to the city, or liability for the act for which this suit was brought, when that act was done , but by virtue of a subsequent contract between himself and the city. His previous declarations, made when his interests were adverse to those of the city, were not admissible in evidence, except to contradict him; and not being offered for that purpose, they were rightly excluded.

The question whether Freeland was qualified to testify to his opinion of the value of the premises was within the discretion of the presiding judge, and no error in law is shown in the exercise of that discretion.

The instructions to the jury were such as have been usually given in similar cases in this Commonwealth, and were correct and sufficient. *Exceptions overruled.*