SEARS, ROEBUCK & COMPANY

*vs.*

INHABITANTS OF THE CITY OF PRESQUE ISLE AND
JOHN E. HENCHEY, MILTON A. WILSON,
EDMUND G. BEAULIEU, ASSESSORS

Aroostook.   Opinion, July 21, 1954.

*Jacobson & Jacobson,*
*Berman, Berman and Wernick,* for plaintiffs.

*James A. Bishop,*
*Hutchinson, Pierce, Atwood & Scribner,* for defendants.

SITTING: FELLOWS, C. J., WILLIAMSON, TIRRELL, WEBBER, BELIVEAU, TAPLEY, JJ.

FELLOWS, C. J.   This claim for abatement of tax comes to the Law Court on report.

It appears that on the first day of April 1953 the plaintiff Sears, Roebuck & Company was operating a store in the City of Presque Isle, Maine.  On April 16, 1953, in accordance with notice from John E. Henchey, Milton A. Wilson and Edmund G. Beaulieu, Assessors for the city, Sears, Roebuck & Co. made out and sent to the assessors a schedule showing stock in trade $302,900, furniture and fixtures $18,350, a total of $321,250.  This list made by the plaintiff company represented the year's monthly average of stock in trade from March 26, 1952, to March 26, 1953.  Sears Roebuck later received from the city a tax bill for 1953 in the sum of $10,687.47 which, at the tax rate of 41 mills, shows an assessment of $260,670 or approximately 80% of the amount stated by the company.

On October 9, 1953, Sears Company sent to the Tax Collector a check for $6191 for its tax, which amount represents about 47% of the amount stated in the schedule instead of the 80%.  The claim of Sears, Roebuck & Company being, that real estate in Presque Isle was assessed at only 47% of its value, and that an assessment at 80% on this personal property operated unequally and unfairly, that the assessors "did in fact deliberately, systematically and with design to operate inequitably and unequally upon said Sears, Roebuck & Co., did assess for the year 1953 real

estate in the same locality, belonging to other tax payers in accordance with the general scheme of equal apportionment to wit: on a valuation based upon real estate values which is approximately 47% of the true value thereof, but that said general scheme of apportionment was not followed in the assessment of personal property of said Sears, Roebuck & Co. This the plaintiff alleges is illegal, disproportionate, unjust and violates Article XXXVI, Article IX, Section 8, of the Constitution of the State of Maine and the Fourteenth Amendment to the Constitution of the United States of America, and said plaintiff thereby has been deprived of equal protection under the law with other tax payers." The City of Presque Isle gave credit to Sears Company, on account of the 1953 tax, the amount of the check for $6191.

The Sears Company filed its petition for abatement with the assessors of the City of Presque Isle on November 12, 1953. At a meeting of the Board of Assessors November 24, 1953, the petition for abatement was denied. The petitioner then appealed to the Superior Court for Aroostook County. The evidence was taken out before a Justice of the Superior Court at the February Term 1954, and by agreement of parties, and by order of court the case was reported to the Law Court, which court "shall, upon so much of the evidence as is legally admissible, render such final decision as the rights of the parties require."

All questions relating to election of assessors, the formal proceedings before them, the filing of petition for abatement, its denial, and the appeal to the Superior Court are admitted by both parties as taken in accordance with statutory requirements.

The case was well and fully tried by most capable counsel on both sides. The record is long and contains much contradictory testimony. The briefs are very comprehensive and fully show the claims and contentions of the parties.

The applicable law presents little complication, and but little disagreement between the parties. The facts presented to the court, however, for determination, and the applicability of the facts to the law are difficult. The evidence is a collection of opinions from experts and non-experts, with varying opinions of values and percentages, and varying opinions as to local economic conditions and the effect of the potato market, an air base, and other circumstances, together with the changes past and present, and possibilities of the future.

It is altogether the picture that confronts assessors in many towns and cities in Maine. How can assessments be made that are just and equitable under the law? "Equality is equity," but on the practical side, assessors are ordinarily men of little experience. A majority of a newly elected board are often men who never had any experience in valuation of any kind of property, and men who are not expected to be "full time" and are not paid to be. Popularity and not ability often elects many municipal officers. Necessarily, most assessors must get their facts on which to base their opinion as to property values from opinions of owners, and from incomplete, improper or prejudiced hearsay, with only an incomplete examination of the property itself. There are not hours enough in his term of office for an assessor to examine or to see every building from cellar to attic, nor to see anything of stock in trade beyond a few packages of hardware or groceries. These facts are well known to everyone who knows anything of local assessments. These facts were known by the people when the constitution and when its amendments were by them adopted. These facts are known to a great majority of the members of every Legislature because most legislators have been at some time town or city officials.

Taxation must be practical. It must bring results. The gross amount that is necessary to raise for governmental

purposes, depends on the price necessary to pay for the public demands for the protection and benefits of our civilization. The practical methods and results of honest, though inexperienced assessors, who live in the town or city, are much more valuable, and as likely to be correct, as are the theoretical contentions of expert political economists. See *Nicol* v. *Ames,* 173 U. S. 509, 516.

Article IX, Section 8 of the Constitution of the State of Maine, as amended in 1875 and 1913, now reads as follows:

"All taxes upon real and personal estate, assessed by authority of this state, shall be apportioned and assessed equally, according to the just value thereof; but the Legislature shall have power to levy a tax upon intangible personal property at such rate as it deems wise and equitable without regard to the rate applied to other classes of property." These words are plain. There is no ambiguity. Our court has recognized their meaning, although no decision has expressly decided the question here in issue. In *Brewer Brick Co.* v. *Brewer,* 62 Me. 62 (decided in 1873), the court say "the very idea of taxation implies an equal apportionment and assessment upon all property, real and personal, according to its just value." The court has recognized in the past, and now recognizes and decides, that all property should be considered and treated for purposes of taxation on an equal basis, and according to just value. See *Sawyer* v. *Gilmore,* 109 Me. 171; *Hamilton* v. *Portland Pier District,* 120 Me. 15; *Opinion of the Justices,* 97 Me. 595, 597.

Assessors of taxes, chosen by a city or town, are public officers. There is no relation of principal and agent between them and the municipality. When they act officially the inhabitants have no control over them. *Rockland* v. *Farnsworth,* 93 Me. 178, 183; *McKay Radio & Telegraph Co.* v. *Cushing,* 131 Me. 333; *Knight* v. *Thomas,* 93 Me. 494; *Sweet* v. *Auburn,* 134 Me. 28. See *Shawmut Mfg. Co.* v. *Benton,* 123 Me. 121.

The petitioner for an abatement of taxes must prove his case. He must show that his property is overrated. He must show that the valuation with relation to just value is manifestly wrong or that an unjust discrimination exists. He must establish that he is aggrieved. *Shawmut Mfg. Co.* v. *Benton,* 123 Me. 121; *Sweet* v. *Auburn,* 134 Me. 28.

The record in this case shows the manner in which these taxes were assessed in 1953. The assessors accepted an inventory or estimate of the owner of the stock in trade and assessed a value of approximately 80%. In regard to real estate, it appears that the City of Presque Isle in 1949 employed a firm of experts, Cole, Layer & Trumble, to make a complete and detailed valuation of all lots of land and of all buildings in the city. After investigation and study, this firm based its findings on 1940 values, and it was understood that the firm used, in part, reproduction costs less depreciation. The values for the year 1940 were taken for the reason that it was believed the values of that year could be gauged by the then conditions. In that year there was neither "the excesses of a boom" nor the "despair of a depression." *Sweet* v. *Auburn,* 134 Me. 28, 32. The information from Cole, Layer & Trumble was given on individual cards and these cards were used by the assessors for the succeeding years as a starting point for their valuations, with such changes as were indicated necessary in individual cases through sales, alterations, repairs, different opinions of different boards as to value, and the changes due to obsolescence, depreciation, location, use and the like, and changes due to economic conditions.

The assessors of 1953, according to the Chairman of the Board, who testified, taxed at 80% of $302,900 and that the assessors carried the furniture and fixtures of the petitioner in the office records at $45,865 which value of the fixtures was credited with 50% depreciation, and then taxed at 80% or $18,350. The chairman, and the two other members of

the Board, testified that all property, real and personal, was assessed in 1953 at 80% of what the Board determined was its value. The determination of the Board of Assessors as to each individual assessment was placed on the assess- ment rolls with the value of land and the value of buildings separate.

The assessors of 1953 took each card (made by the experts Cole, Layer & Trumble, who were employed by the city council in 1949) and finding the facts therein given, to be true, took it as a base for their valuation, and unless there was some determining factor to alter their decision, they decided that in 1953 the value in each instance had increased 25%. Adjustments were made for depreciation, new buildings, destruction of old buildings, use, etc., and assessment made at 80% of this value. The 1940 value was therefore approximately 80% of the 1953 values.

The appellant Sears Company offered much evidence, which, it claims, shows that for the year 1953 (and also for the years 1952, 1951 and 1950) the tax assessors for the city "systematically and with design, fixed the valuation of each tax payer's real estate in Presque Isle at that figure which represented the assessor's estimate of the value of the real estate in the year 1940" while "stock in trade was valued at 80% of its 1953 value." The appellant petitioner claims that the system employed was an improper and unlawful method and that "a variance of 1% would violate the constitutional requirement of uniformity and equality." In other words the Sears Company says it would be unconstitutional to value an owner's real estate at a figure which is 21% less than the 1953 value, and at the same time to value stock in trade at 20% less than its 1953 value.

The company evidently takes the position that an assessment value must be absolutely true value, and must be exact to the last dollar, that the amount of deduction from exact

value must be beyond question the same to 1% on each individual parcel of land and each individual building. The company expects and demands the impossible, because it says the impossible only is constitutional. What is "value," "just value," or "market value" of real estate? How can it be determined to the last cent? Where or how can the plaintiff appellant or the defendant city find a method for such determination? Surely not by the experts offered by the plaintiff company, one a political economist who was a college professor and had never been in Presque Isle to make examination or investigation, and gave no values of any particular piece of real estate there. He only gave his opinion as to trends or changes in values and the purchasing power of the dollar. Nor does another expert, with field experience in Federal Housing Loans on local real estate, give anything material beyond his opinion of varying increases in percentages as to farm and urban real estate, with some figures and charts. This expert stated that in his opinion real estate had been valued for tax purposes at substantially less than 80% of its fair value in 1953, whereas stock in trade was valued at 80% of its 1953 value. All the expert testimony, if it is correct, shows no certainty in exact figures as to any particular land or building. It is claimed by the petitioner however, that it proves to a certainty that the minimum increase in real estate values between 1940 and 1953 was 40% or more, and that "the petitioner is entitled to have its valuation reduced to at least 66% of its 1953 value," and that its tax should therefore be abated.

True and exact "market" or "just" values cannot be certain or made certain. It is a matter of judgment. It is the judgment of the assessors when considering valuation for tax purposes. A sale shows what is paid, not what is the exact value. A sale may represent sentimental value or value as an investment, possible future value, or it may

represent use, location, or any one or more of many things. *Sweet* v. *Auburn,* 134 Me. 28, 32, 33.   61 C. J. "Taxation" 638 Sec. 789, 84 C. J. S. "Taxation" 780 Sec. 410.

Value is usually proved by opinion of the owner, by opinions of experts, by price in sales of similar property in the neighborhood. The value of real estate and personal property for taxation purposes, the Legislature has declared, must be fixed by the individuals who have been elected as assessors. It is their opinion and their judgment that controls, unless so unreasonable in the light of the circumstances that the property is substantially overvalued and an injustice results, or that there is an unjust discrimination, or that the assessment was in some way fraudulent, dishonest or illegal. The contention of the plaintiff company is so impractical and impossible that no valid assessment could possibly be made. Neither the constitution nor the statutes expect that a Board of Assessors could make an assessment with all values so exact that no "expert" could disagree with them.

The court cannot believe, and would not be justified in believing on this record, that there was any unlawful or improper "scheme" on the part of the assessors as urged by the petitioning company. The scholarly briefs and argument of the counsel for the company are skillfully made and are within themselves "plausible and convincing." The evidence to support is not. The assessors determined the value of the petitioner's stock in trade upon the petitioner's own statement. They determined the value of each tax payer's real estate by taking the information of values in 1940 as a starting point, which information was purchased by the city itself, and by adding 25% as the amount that the assessors decided was the increase in value in the year 1953. Then with any other applicable and known facts, that might affect the value of the real estate, they made the assessment.

The City of Presque Isle, due to its location, is vitally affected by the potato market. Values of all property in the city fluctuate in some measure, as the price of a barrel of potatoes may change. Farm values change with potato prices, and the value of urban properties necessarily react. Then too, there is in Presque Isle an army air base that is today activated, with many soldiers needing housing, and tomorrow the base may be suddenly deactivated with the soldiers gone. It is common knowledge, to all Maine citizens, that Aroostook County and its prosperity depends to an abnormal extent on the market value of a potato, while with the varying defense ideas in Washington, the use of air fields, or their idleness, is to be continually expected. As one witness who was a member of the Board of Assessors testified, "1940 was a normal year," "all factors were normal," "a normal farming year," "there was no price support to give an inflated value," "twenty-five percent increase as between 1940 and 1953 was a fair estimate in my opinion of the maximum increase in real estate values in Presque Isle." "We were trying to assess and apportion taxes equally."

The law requires equality, and requires that each property owner pay his just proportion of taxes. The law requires that real estate and tangible personal property be valued on an equal basis "according to the just value thereof." The law requires that there be no favoritism nor discrimination. The law requires that when a percentage of the true value is taken for taxation purposes, the percentage be uniform and equal on all real estate and tangible property. The law expects that all assessors will be honest with themselves, fair with the public, and true to their oath of office, in their endeavor to reach an equality to the best of their ability. The law expects that assessors will be guided by the fixed star of equality, and so far as may be, under all conditions and circumstances, effect that equality which the law demands.

The case at bar differs materially from the case of *Bemis Bros.* v. *Claremont* (N. H.) 102 Atl. (2nd) 512 cited by the petitioner. In the New Hampshire case it was admitted that the city assessor assessed stock in at 100% of the market figure for the year 1951, and it was further admitted that land and water power was assessed at 80% of its value, and admitted that machinery was assessed at 60% of its value, and buildings at 55%. The New Hampshire Court say "we find no legal basis for assessing stock in trade at its full market value and real estate and other such property at varying percentages lower than its market value."

The evidence in this case at bar shows clearly that there was an honest effort on the part of the Board of Assessors of the City of Presque Isle in the year 1953 to perform its duty, and while perfection may not have been attained, there was no "scheme" proved to discriminate. In the unanimous opinion of the members of the court, the record shows that the valuation, having reference to just value, is not "manifestly wrong" nor that "an unjust discrimination denying the equal protection of the laws exists." It is not established by the petitioner's evidence that it is "aggrieved." *Shawmut Mfg. Co.* v. *Benton,* 123 Me. 121, 131; *Sweet* v. *Auburn,* 134 Me. 28; *Power Co.* v. *Hiram,* 125 Me. 138; *Spear* v. *Bath,* 125 Me. 27.

*Appeal dismissed.*