J. A. SCHLAIKER & another, trustees, *vs*. BOARD OF ASSESSORS OF GREAT BARRINGTON.

Suffolk.    September 20, 1973. — May 6, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Taxation*, Real estate tax: abatement. *Value. Evidence*, Presumptions and burden of proof.

On an appeal from a refusal of the assessors of a town to grant an abatement of taxes on real estate, where the Appellate Tax Board found no credible or persuasive evidence that the property had a lower value than that assessed, it was proper for the board to conclude that the taxpayer had not sustained the burden of proving a right to an abatement, to presume that the assessors' valuation was valid, and to uphold their refusal. [244-246]

APPEAL from a decision of the Appellate Tax Board.

*Mark J. Witkin* (*Arnold Bloom* with him) for the taxpayers.

*William P. Murtagh*, Town Counsel, for the Board of Assessors of Great Barrington.

REARDON, J.    This is an appeal from a decision of the Appellate Tax Board (board) upholding the refusal of the board of assessors of Great Barrington (assessors) to grant abatements on real estate taxes in the years 1969 and 1970. The taxpayers were owners of a nursing home on 4.2 acres of land on Maple Avenue in Great Barrington. In each of the relevant years the assessors valued the property at $812,230. In 1969 they assessed a tax in the amount of $26,803.59 based on a rate of $33 a thousand, and in 1970 a tax was assessed for $30,864.74 based on a rate of $38 a thousand. In each year the taxpayers seasonably applied

for abatements which were denied, and timely appeals were made to the board.

There were two witnesses before the board. John E. Connally, real estate director for Healthco, a health care corporation which operated the nursing home, testified as to the characteristics of the enterprise, its revenues and expenses. Using the "capitalization of income" method, he arrived at a valuation of $573,000[1] in 1970. Providing a less detailed analysis, he estimated a fair cash value of $535,000 for 1969. Robert G. Guidi, the chairman of the assessors, testified that the assessors had used the "reproduction cost less depreciation" approach to valuation in arriving at their figure of $812,000. The board in a "Decision" dated July 19, 1972, and an "Opinion" promulgated on December 6, 1972, held for the assessors. In its findings of fact and report the board declared that the taxpayers had not sustained the burden of proving that their property had been overvalued. An appeal was taken to this court and argument was heard in September, 1973. By an order dated November 21, 1973, this court remanded the case to the board for further findings of fact. Supplementary findings were filed with this court on January 30, 1974. On the basis of those findings we affirm the decision of the board.

The board's findings were primarily concerned with the testimony of Connally. It found that he failed to supply a sufficient description of the property involved. With respect to his use of the capitalization of income method, it noted that he did not provide evidence that a nursing home was the most productive use of the property, that the nursing home was being operated efficiently and thus producing its fair potential in income, or that the expenses cited were reasonable. The board also found that one expense item in particular, a $48,750 "management fee," was not explained. No clear reason for it was offered and the

---

[1] The original findings of fact and report showed a figure of $573,000 in the table setting out the computation used by Connally. Later in the findings, and in the supplementary findings, the figure $535,000 is used. We asume the latter figure to be a clerical error.

board gave it little weight as a proper operating expense. Without this expense, and utilizing the other data given and the capitalization rate applied by Connally, a figure very close to the assessors' valuation would result. There were various other specific defects found in Connally's testimony leading the board to the finding that it was "deficient and inadequate in several important respects." The decision of the board is final as to findings of fact. G. L. c. 58A, § 13.

Since the board found no credible or persuasive evidence that the taxpayers' property had a lower value than that assessed, it was proper for the board to conclude that the taxpayers had not sustained the burden of proof. "The burden of proof is upon the petitioner to make out its right as matter of law to abatement of the tax." *Judson Freight Forwarding Co.* v. *Commonwealth*, 242 Mass. 47, 55 (1922). It was proper for the board to presume that the valuation made by the assessors was valid unless the taxpayers sustained the burden of proving the contrary. While little cited in this court, this is a rule of practically universal application, e.g., *Sunday Lake Iron Co.* v. *Wakefield*, 247 U. S. 350, 353 (1918); *Alfred J. Sweet, Inc.* v. *Auburn*, 134 Maine 28 (1935); *Park Drive Manor, Inc. Tax Assessment Case*, 380 Pa. 134, 136 (1955); *Western Maryland Ry.* v. *Board of Pub. Works*, 141 W. Va. 413, 421 (1955). Since there was no such proof here it was correct for the board to sustain the original assessment.[2]

The original and supplementary briefs of the taxpayers argued extensively that the testimony of Guidi on behalf of the assessors was not competent because Guidi lacked the

---

[2] While specifically exempted from the provisions of G. L. c. 30A, the State Administrative Procedure Act, the Appellate Tax Board is still bound by "general principles affecting administrative decisions and judicial review of them." *Assessors of New Braintree* v. *Pioneer Valley Academy, Inc.* 355 Mass. 610, 612, n. 1 (1969). Among those principles must certainly be counted the rule that findings of the agency must be supported by substantial evidence on the record as a whole. However, where as here there is no persuasive evidence on the part of the party carrying the burden of proof, a conclusion that a presumptively valid assessment must stand is by its nature not such an affirmative finding as to require substantial evidence to support it.

requisite expertise to give evidence on the reproduction less depreciation method of valuation. *Tigar* v. *Mystic River Bridge Authy*. 329 Mass. 514 (1952). The board's findings of facts, however, place no reliance at all on the testimony of Guidi. Therefore the competence of this evidence cannot be deemed to have affected the board's decision. Similarly, the taxpayers attack the board's express finding that it placed "great weight" on the fact that stamps affixed to a 1969 deed indicated a sale price of the property at $978,000. The relevance of this fact is challenged and the issue is raised as to the effect of a ruling of law granted by the board qualifying the use of such stamps in estimating value. Since it was only necessary in this case for the board to disbelieve the taxpayers' witness to sustain the assessment, the propriety of this other evidence cannot be determinative. Even if the board was wholly incorrect in placing any reliance on the stamps, its critical evaluation of the proffered evidence of over-assessment provided sufficient grounds for its findings that the taxpayers had not met their burden of proof.

The decision of the Appellate Tax Board is affirmed.

*So ordered.*