Laser FRANK, formerly Skowhegan
Village Shopping Center

v.

ASSESSORS OF SKOWHEGAN and The
Inhabitants of the Town of Skowhegan.

Supreme Judicial Court of Maine.

Dec. 2, 1974.

---

2. In such cases the evidence serves to clarify an ambiguous deed rather than to contradict an unambiguous one.

---

Jolovitz & Niehoff, Lester T. Jolovitz, Waterville, for plaintiff.

Bernstein, Shur, Sawyer & Nelson, Barnett I. Shur, Portland, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WER-

NICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

This action was originally brought by Skowhegan Village Shopping Center[1] against the Assessors of the Town of Skowhegan and the Inhabitants of the Town of Skowhegan.[2] A tax abatement was sought. The appeal from the Assessors' refusal to abate was taken seasonably to the Superior Court of Somerset County pursuant to 36 M.R.S.A. 845. By agreement of the parties, the matter was heard by a Referee with objection rights reserved.[3] The Referee's report was accepted by the Court over defendant's objections. Plaintiff appeals from the decision to uphold the tax assessment.

We deny the appeal.

When appeal was taken to the Superior Court under authority of 36 M.R.S.A. 845 what issues were before the Court?

All action with respect to the taxpayer's assessment prior to the appeal to the Superior Court was taken by administrative officers, i. e., tax assessors.

By appeal to the Superior Court the taxpayer sought judicial review of the conclusions of administrative agents.

By this appeal to us we are required to review the conclusions reached by the Su-

---

1. The complaint was amended to substitute the name of Laser Frank, owner of record as of April 1, 1970, for that of the original plaintiff.

2. 36 M.R.S.A. 849. See also Berry v. Daigle, Me., 322 A.2d 320 (1974).

3. In Morrill v. Johnson, 152 Me. 150, 125 A.2d 663 (1956), this Court had occasion to determine whether reference by agreement in a sales tax appeal was within the intendment of the applicable appeal statute. (Ch. 17, Sec. 33 of R.S.1954). In deciding that reference was improper, the Court was influenced by the express terms of the statute conferring exclusive jurisdiction on the Superior Court "in term time or [before] any justice thereof in vacation." Concluding from such language that "There is no interpretation of the specific directions as to hearing that permits of reference." 152 Me. at 153, 125 A.2d at 664.

Three years after *Morrill* was decided the Legislature eliminated the very phrase on which the Court had placed its reliance in concluding the statute prohibited reference in a tax assessment appeal. (P.L.1959, c. 317, Sec. 6). *Morrill* no longer controls. Any case may be referred by agreement under Rule 53(b)(1) unless a statute expressly prohibits reference. (See Ingham v. Tzikas, Me., 320 A.2d 665, 668 (1974)). Before any order of reference without agreement may issue, showing must be made some exceptional condition warrants reference. Rule 53(b)(2).

perior Court. To do this we must determine the scope of the review which the statute (36 M.R.S.A. 845) authorized to be had by the Superior Court.

The statute itself merely provides that

"Any person entitled to appeal to a board of assessment review or to the county commissioner for an abatement of his taxes may, if he so elect, appeal under the same terms and conditions from the decision of the assessors to the Superior Court in and for that county."

The provision which follows states that the appeal granted in *Section 845*.

". . . shall be tried, heard, and determined by the court without a jury in the manner and with the rights provided by law in other civil cases so heard." 36 M.R.S.A. 846.

Rule 80B, M.R.Civ.P., supplies the procedural framework for review of all administrative action where, as here, the petitioner's right to such review is provided by statute. There is nothing in the particular statute with which we are concerned nor in Rule 80B which specifically defines the scope of judicial review of tax assessments.

■ Generally speaking, unless a statute provides otherwise,[4] judicial review of any administrative decision is limited to complete review of questions of law and to limited review of questions of fact only to test the reasonableness of the conclusions reached.[5]

■ Absent specific legislative directions otherwise, orders of an administrative agency are final unless the action taken is

(1) beyond the power which it could constitutionally exercise (Anheuser-Busch, Inc. et al. v. Walton et al., 135 Me. 57, 190 A. 297 (1937)), or

(2) beyond its statutory power (Girouard's Case, 145 Me. 62, 71 A.2d 682 (1950)), or

(3) taken without according procedural and substantive due process (Kovack v. Licensing Board, City of Waterville, 157 Me. 411, 173 A.2d 554 (1961)), or

(4) based upon an erroneous interpretation of the law (Central Maine Power Co. v. Public Utilities Com'n., 153 Me. 228, 230, 136 A.2d 726, 729 (1957)); Larry K. Harlow v. Agway, Inc., &/or Travelers Insurance Company, Me., 327 A.2d 856 (November 7, 1974), or

(5) based upon conclusions of fact which have no substantial evidence in support thereof (In re Maine Clean Fuels, Inc., Me., 310 A.2d 736 (1973)).

To determine whether the administrative body reasonably exercised its discretion, the reviewing court is confronted at the start with the problem of what evidence it may properly receive.

4. See e. g. 35 M.R.S.A. 305 which specifically directs the Law Court, in review of an action taken by the Public Utilities Commission, to "exercise its own independent judgment as to both law and facts" where a confiscation of property or other violation of constitutional right is alleged. See: Peerless Casualty Company v. United States, 241 F.2d 811, 817 (1st Cir. 1957), holding except where Constitution otherwise requires, no broader right to judicial review of administrative action may be claimed than that granted or withheld by the Congress.

5. Ohio Valley Water Co. v. Ben Avon Borough, 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908 (1920), holding that independent judicial judgment as to both law and fact in certain circumstances is constitutionally required, although never overruled, has been so modified by St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 56 S.Ct. 720, 80 L.Ed. 1033 (1936), Acker v. United States, 298 U.S. 426, 56 S.Ct. 824, 80 L.Ed. 1257 (1936), Railroad Commission of Texas v. Rowan & Nichols Oil Co., 310 U.S. 573, 60 S.Ct. 1021, 84 L.Ed. 1368 (1940), opinion amended 311 U.S. 614, 61 S.Ct. 66, 85 L.Ed. 390 (1941), and Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944), that its holding can no longer be considered the law.

In Lovely v. Zoning Board of Appeals of the City of Presque Isle, Me., 259 A.2d 666 (1969), we had occasion to discuss the responsibility of the court reviewing decisions of the zoning board of appeals under a statute similar to the one authorizing appeal in this case. We said, where there was no record of the administrative proceedings, the review was "de novo" in the sense that the court· may hear new evidence. However, such evidence which is adduced must relate to the limited issue of the reasonableness of the administrative decision. Such review, the Court said, provided,

"a rational and practical means of dealing with appeals from quasi-judicial decisions of municipal agencies." 259 A.2d at 668.

Like the situation in *Lovely,* appeal from a decision of the tax assessors presents the matter to the Superior Court in a somewhat different posture from that usually encountered in a judicial review of administrative action.

Tax assessors have a constitutional obligation to assess all property fairly and according to just value. Me.Const. art. IX, § 8. In actual practice assessors are not always men of special training or skills, especially in the smaller cities and towns. They are public officers who usually bring to their job the intelligence, experience, and judgment of ordinary individuals whose knowledge of property values derives from their having lived and moved and had their being in the community, the property of which they are evaluating.

"Neither the constitution nor the statutes expect that a Board of Assessors could make an assessment with all values so exact that no 'expert' could disagree with them." Sears, Roebuck v. Presque Isle et al., 150 Me. 181, 189, 107 A.2d 475, 479 (1954).

A presumption as to the good faith and conformity to the requirements of the law attaches to assessor's work. Cumberland County Power and Light Company v. Inhabitants of the Town of Hiram, 125 Me. 138, 140, 131 A. 594, 595 (1954).

Many of their decisions must of necessity be made without a formal hearing of which a complete record is made to indicate the factual basis for the judgment.

An appeal from a decision of tax assessors therefore, requires the Court to make its own independent inquiry into all relevant and material facts bearing on the ultimate issue of the fairness and rationality of the assessment.

In the absence of a record, the Court can properly act on the assumption that such evidence as it adduces on review was, in fact, the basis upon which the assessors reached their conclusions (Schultz v. Zoning Board of Appeals of Town of Berlin, 144 Conn. 332, 130 A.2d 789 (1957)), or even if it appears such evidence was not before the assessors, if the evidence before the Court does not compel the conclusion the assessors' judgment was irrational, their judgment should not be disturbed.

The administrative "decision will be assumed to have been taken with full knowledge of material facts and in justification thereof." Central Maine Power Co. v. Waterville Urban Renewal Authority, Me., 281 A.2d 233, 242 (1971), Milwaukee Co. of Jehovah's Witnesses v. Mullen, 214 Or. 281, 330 P.2d 5, 11 (1958).

Case law in this State[6] establishes that judicial review of a tax assessment is limited to whether or not the judgment of the assessors as to the amount of the tax is

"so unreasonable in the light of the circumstances that the property is substantially overvalued and an injustice results,

6. Sears, Roebuck & Co. v. Inhabitants of City of Presque Isle et al., 150 Me. 181, 107 A.2d 475 (1954).

or that there is an unjust discrimination, or that the assessment was in some way fraudulent, dishonest or illegal." 150 Me. at 189, 107 A.2d at 479.

In the case now before us, no claim is made that the assessors

(a) acted pursuant to the purported authority granted by an unconstitutional statute, or

(b) acted in excess of their legal authority, or

(c) denied substantive or procedural due process to the taxpayer.

The narrow issues before the trial court then became,

(1) Was it error of law for the assessors to use the "reproduction cost less depreciation" approach in determining the fair market value of taxpayer's property, and

(2) If it was not error of law so to do, was the assessment so manifestly unreasonable as to constitute improper governmental action?

■ Unless it was error of law for the assessors to employ the appraisal approach which they used, it was the burden of the taxpayer in the Court below to establish by a fair preponderance of the evidence, that

(a) The conclusion as to value reached by the assessors was so unreasonable in the light of circumstances that the property was substantially overvalued and injustice resulted, or

(b) that the assessment was in some way fraudulent, dishonest or illegal.

Before us, the taxpayer is limited to a claim of error of law on the part of the trial Court. Specifically these are listed in the brief as that:

1. The Court below erred in not ruling as a matter of law that when assessing in-

come-producing property assessors must use an "income" or "capitalization of income" approach.

2. The Referee erred in giving no weight to the value placed upon the property using the income approach.

3. The Court erred in finding that there was no improper delegation of the Assessors' statutory duty.

Plaintiff's property consists of land and buildings which comprise a shopping center unique in the town of Skowhegan. The property was assessed in the taxable year of 1970 at the fair market value of $699,580 which, at the tax rate of $50.00 per $1,000.00, resulted in a tax bill of $34,979. The assessment was based on a "reproduction cost less depreciation" approach, a method employed uniformly as to all real property in Skowhegan, including residential, commercial, and industrial land and buildings.

The administrative assistant to the assessors testified he was the person who had done the "leg work" on this assessment. He testified that he used a construction cost schedule supplied by an appraisal firm which had revalued all of the town's real property in 1956. Adjusting the manual's figures to reflect the increase in construction costs since 1956, and the depreciation on the property subsequent to its completion, he arrived at an assessed value for the buildings of $570,320 to which he added the "assessed value" of the land and improvement of $129,000.[7]

Plaintiff presented two witnesses to support his contention that the assessors' approach was improper because it attempted to fix the value of his property without taking into consideration the element of its capacity to return the capital investment of its owner. Without this essential factor, plaintiff argues, the property's true or market value could not be fairly appraised.

---

7. There is some dispute between the parties as to whether the latter figure was "assessed," i. e., 80% of value, or "market value."

The testimony of plaintiff's witness, a professional real estate appraiser, was that he valued the property in question at $560,000, using a combination of the "cost less depreciation" and "capitalization of income" methods. His analysis was based on various figures given him by the developer of the complex, although there is some confusion in the record as to these figures due to differences shown to exist on various income and expense sheets. These differences notwithstanding, he arrived at his valuation in the following manner: Using gross income figures supplied him for 1968, 1969 and 1970, and having determined the rental rates for tenants, he estimated the proper annual rent to be $104,000 and adjusted that figure downward to reflect vacancies and operating expenses. The total net income per year was estimated to be $76,055 before taxes and depreciation. He then capitalized this figure by using an interest rate of 8% and a depreciation rate of 4%, allowing a rate of 2½% for taxes.

The result of this computation was an indicated value of $433,270 for the buildings, to which he added $126,000 which he believed to be the market value of the land and improvements.

The developer set the property's total fair market value at between $420,000 and $450,000, basing his judgment on what he believed a buyer would want as a return on his investment in light of the income-producing capabilities of the property. He also testified that the actual cost of constructing the buildings was $739,000 when 95% completed in 1966–67, that of purchasing the land and improving it was about $200,000, and that it was mortgaged in 1967 for $700,000.

With these divergent opinions in mind, we turn first to the Constitution of Maine for guidance in determining their legal significance.

There is found the imposition of a clear obligation on the tax assessors of this State, to assess fairly and equally.

"All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally, according to the just value thereof." Me. Const. art. 9, Sec. 8.

In testing the legal sufficiency of a tax assessment relevant case law provides us with the necessary guideposts.

■ "Just value" has been held by this Court to be synonymous with true or market value. Sweet, Inc. v. City of Auburn, 134 Me. 28, 180 A. 803 (1935). The latter term has been judicially equated with that price a willing buyer would pay a willing seller at a fair public sale. Chase v. City of Portland, 86 Me. 367, 374, 29 A. 1104 (1887); Lawrence v. City of Boston, 119 Mass. 126 (1875); Blackstone Manufacturing Co. v. Inhabitants of Blackstone, 200 Mass. 82, 85 N.E. 880 (1908).

The market place must be one where normal, as opposed to extraordinary, conditions exist. Sweet, Inc. v. City of Auburn, supra.

We recognize that to define "just value" does not obviate the real problem which is how to fairly and accurately *determine* that value.

The determination by its very nature must be judgmental.

Moreover, it is a judgment concerning which fair, reasonable people may differ.

■ Conceding that mathematical imprecision inheres in the process, we have adopted the principle that

"The proving of a mere error of human judgment, . . . will not support a claim of overrating; *'there must be something more—something which in effect amounts to an intentional violation of the essential principle of practical uniformity.'* "

Shawmut Manufacturing Co. v. Town of Benton, 123 Me. 121, 130, 122 A. 49, 53 (1923), quoting with approval the words of

Chief Justice Taft in Sioux City Bridge v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923).

> "It is solely where there is evident a systematic purpose on the part of a taxing board to cast a disproportionate share of the public burden on one taxpayer, or one class of taxpayers, that the court will intervene."

Sweet, Inc. v. City of Auburn, supra, 134 Me. at 33, 180 A. at 805.

■ It is the taxpayer's burden to show that the assessment was not in conformity with the law. Sears, Roebuck & Co. v. Presque Isle et al., supra. Schlaiker v. Board of Assessors, Great Barrington, Mass., 310 N.E.2d 602 (1974).

■ Having found that the assessed value of plaintiff's property was neither manifestly wrong with relation to its true value nor inequitable as to the tax burden shared by him, the Court below concluded from all the evidence that the judgment of the assessors was neither consciously nor designedly arbitrary.

We agree.

The real dispute in this case centers on the method of valuation to be used in arriving at the just value of the property in question.

The parties stipulated to the accuracy of the figures used under the town's construction cost approach. Plaintiff does not contend that this approach was used in a discriminatory manner in the sense that it applied only to his property. The record shows a combination of this method, and comparable sales where applicable, was employed for tax purposes as to all property in the town of Skowhegan, and the ratio of 80% was applied uniformly to indicate assessed value.

The heart of plaintiff's contention is that to have assessed his property, which was built only for its income producing potential, by the "cost less depreciation"

method to the exclusion of the other approach (i. e., capitalization), which would offer the surest guidance to a sound appraisal, was a violation of the assessor's statutory obligation to assess justly and equally. The lower court's refusal to give any weight to the income approach was error as a matter of law he says.

Under the rule of Sears, Roebuck & Company v. Presque Isle et al., supra,

> "The petitioner for an abatement of taxes must prove his case. He must show that his property is overrated. He must show that the valuation with relation to just value is manifestly wrong or that an unjust discrimination exists. He must establish that he is aggrieved." 150 Me. at 186, 107 A.2d at 477.

The plaintiff was permitted to put in evidence the opinion of an expert appraiser as to the true value of the shopping center using an "income" or "capitalization of income" method. That figure was predictably well below the value placed upon the property by the assessors. The Referee also admitted the opinion of the property's developer as to its market value. His judgment was that the value was even lower than that assigned by the appraiser. During the hearing the Referee ruled that all evidence relating to an income approach would be received by him "de bene," and he would determine only at the conclusion of the trial whether or not to admit such evidence finally. Having concluded as a matter of law that the plaintiff *was* "entitled to present all relevant evidence on value," the Referee did admit the extensive testimony relating to the "income" method. However, he found that "no weight" could be given the values placed upon the property under that approach in light of contradicting evidence as to the actual cost of constructing the shopping center only three or four years prior to the taxable year involved.[8] As he posed the question:

> "What happened between 1966–67 and 1970 to change the value from $940,000

8. See Kargman v. Jacobs, R.I., 325 A.2d 543 (1974).

to $420,000—$450,000 or at most $560,000? I find no factor of obsolescence in the sense that the shopping center is not useful, or deterioration in the sense of a run down neighborhood or the like. At most the taxpayer has not realized in the first two or three years of the life of the project the income which he had anticipated."

Plaintiff has fully argued the merits of employing a "capitalization of income" method of taxing income-producing property. He has cited judicial precedent for the proposition that ignoring all factors affecting the value of property other than "cost less depreciation" should be grounds for relief when that method results in a substantial deviation from the property's true value. Bade v. Drachman, 4 Ariz.App. 55, 417 P.2d 689 (1966).

Had the Referee excluded the evidence proffered on the "capitalization of income" approach and considered only that adduced as to the "reproduction cost" approach, plaintiff would be in a better position to claim that he was aggrieved because only one method was used to evaluate his property. However, the record indicates the Referee admitted all the "income" evidence but found it neither credible nor persuasive enough to justify the conclusion that plaintiff's property had been substantially overvalued.

"It was proper for the [*Court*] to presume that the valuation made by the assessors was valid unless the taxpayers sustained the burden of proving the contrary. . . . Since there was no such proof here it was correct for the [*Court*] to sustain the original assessment." Schlaiker v. Board of Assessors of Great Barrington, Mass., 310 N.E.2d at 604.

It seems to us plaintiff, in effect, is saying that a willing purchaser will pay for income-producing property only that price which is justified by the income produced at or just prior to the time of purchase.

Income from rental property is peculiarly subject to the influence of temporary general economic conditions. If we carry, what seems to be plaintiff's argument, to its logical conclusion, tax assessors would be required to down value income-producing property each time there is even a temporary economic decline.

We cannot accept this reasoning.

Stability in municipal income is a factor which must always be considered. To require owners of property which is not income-producing to pick up the deficiency resulting from reducing the tax burden of income property owners each time there is a temporary downward trend in the economy, would surely not be either feasible or equitable.

The assessors ought not be required to treat this plaintiff differently because his property is not for the time being producing the rate of return on his investment which was anticipated.

". . . [assessors] should recognize that the true value of a fixed asset, such as real estate, is fairly constant and must be gauged by conditions, not temporary and extraordinary, but by those which over a period of time will be regarded as measurably stable." Sweet, Inc. v. City of Auburn, 134 Me. at 32, 180 A. at 804.

We note the Vermont Supreme Court recently had occasion to discuss the importance of employing more than one method in valuing property for tax purposes. Appeal of Hughes, Vt., 318 A.2d 676 (1974). The *Hughes* Court reaffirmed the principle that the use of any single approach or combination of approaches "that lead the appraisers astray of their statutory responsibility will not be accepted." Barnet v. Central Vermont Public Service Corporation, 131 Vt. 578, 581, 313 A.2d 392, 393 (1973).

The Court observed that approaches such as "reproduction cost," "earning power," or "construction cost less depreciation" are

only devices to aid in determining fair market value.[9]

We turn now to two other issues raised by the plaintiff on this appeal.

▮ The first relates to the correct figure to be placed on the value of plaintiff's land. The Referee found that $129,000 was the *"agreed assessed* value of the land with paving and improvements." It is the position of the plaintiff that the land with improvements had a *fair market* value of $126,000 to which the 80% ratio was yet to be applied to determine its assessed value.

The record demonstrates that the developer of the shopping center paid approximately $40,000 in 1966 for the thirteen acres on which it was built, and expended about $160,000 to build a parking lot. In light of his own testimony, it is difficult to perceive how plaintiff has been unjustly assessed as to the land. Applying the 80% ratio to his own land value figure of $200,-000, the assessment could have been as much as $160,000 rather than the $129,000 the Referee found to be the agreed assessed value.

We cannot say that plaintiff is "aggrieved" as to the assessment of his land.

▮ The final point raised by plaintiff in this appeal relates to the delegation of the assessors' authority to their administrative assistant. Plaintiff's contention that the assessors "merely rubber-stamped the assistant's work" is based in part on the latter's testimony as to the scope of his duties, and in part on the relationship he has with the assessors for whom he works. The assistant testified that he personally inspects the property to be assessed, doing the measuring, grading and pricing according to a cost construction schedule pro-

vided him. He then delivers his tabulations to the town's assessors who finally make the appraisal for tax purposes. Plaintiff describes as "most revealing" the testimony of the assistant to the effect that the assessors never reject his opinion although they "have argued a little bit."

We are not so impressed.

The evidence is uncontroverted that

(1) the assessors personally visited plaintiff's property,

(2) all the assessors were present when the assistant presented his report for their approval, and

(3) his valuations were explained to them very thoroughly.

In Sears, Roebuck v. Inhabitants of the City of Presque Isle et al., supra, we recognized the work of tax assessors would necessarily require that they avail themselves of the skill and energies of subordinates to assist them in carrying out their statutory obligations.

We did not then, and we do not now, believe that to delegate responsibility for measuring and pricing property, while retaining the ultimate authority to fix the assessment for tax purposes is an improper abdication of the assessors' statutory duties.

We are satisfied from a careful reading of the record that no error was committed by the Court below. Denial of the taxpayer's appeal from the assessors' refusal to abate the taxes, or any portion thereof, was proper.

Therefore, the entry must be,

Appeal denied.

All Justices concurring.

9. The appeal was sustained and the case remanded to the State Board of Tax Appeals because that body had failed to make a finding relative to whether or not the property subject to appeal had a listed value comparable to other properties of the same nature, in compliance with the applicable statute. (32 V.S.A. § 4467.)