**AUGUSTA WATER DISTRICT**

v.

**INHABITANTS OF TOWN OF READFIELD et al.**

Supreme Judicial Court of Maine.

Jan. 2, 1976.

Sanborn, Moreshead, Schade & Dawson, by Peter T. Dawson, Augusta, for plaintiff.

Locke, Campbell & Chapman, by Frank G. Chapman, Augusta, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD, and DELAHANTY, JJ.

WEATHERBEE, Justice.

The plaintiff owns a tract of land in Readfield, which land includes Carleton Pond, a source of the plaintiff's water supply. The plaintiff appealed[1] from the failure of the assessors to grant an abatement

_____

1. M.R.C.P., Rule 80B.

of the taxes assessed against this property for the years 1971 and 1972 and the issue was submitted to a Referee for determination. The Referee found that the plaintiff was entitled to a partial abatement of the 1972 taxes and the Report was accepted by a Justice in the Superior Court who ordered a judgment entered to that effect. Defendants seasonably appealed. We deny defendants' appeal.

Although the Referee based plaintiff's entitlement to relief upon two alternate grounds, we will consider only one. This involves our interpretation, for the first time, of that part of P.L. 1971, ch. 548 (36 M.R.S.A. §§ 585–594) which authorizes the designation of areas of "open space land" for assessment purposes.

The Legislature found it to be in the public interest "to prevent the forced conversion of farmland and open space land to more intensive uses as the result of economic pressures caused by the assessment thereof for purposes of property taxation at values incompatible with their preservation as such farmland and open space land." 36 M.R.S.A. § 585.

"Open space land" is defined by section 586 as

". . . any area of land, including state wildlife and management areas, sanctuaries and preserves designated as such in Title 12, forest land and farmland, the preservation or restriction of the use of which would:

A. Conserve scenic resources;

B. Enhance public recreation opportunities;

C. Promote game management; or

D. Preserve wildlife."

The procedure authorized for determination of this classification is found in section 588, which permits the planning board of a municipality in preparing a comprehensive plan of land use to recommend areas as appropriate for preservation as open space land. Upon adoption of the plan, land included in these areas is entitled to the benefits of this classification for tax purposes so long as the assessors find there had been no significant change in its use since the original designation.

■ The Act also permits an owner of land which has not been so designated to make written application to "the municipality"—which we take to mean the assessors as this is essentially an assessment duty— for such a classification. The assessors must then determine whether the land qualifies for such a classification under section 586(2). (If the municipality has a comprehensive plan—as Readfield did not —approval of the Planning Board is also required.) The State Tax Assessor is empowered to furnish the municipalities with recommended current use values of open space land but these are not binding upon the local assessors. (No such recommended values had been prepared by the State Tax Assessor at the time of Readfield's 1972 assessment.)

■ On March 29, 1972 the plaintiff sent defendant town a listing of its property subject to taxation pursuant to 36 M.R.S.A. § 706, together with an application for classification as open space land. When no favorable action was taken upon this request, it applied for an abatement of taxes on September 22, 1972. 36 M.R.S.A. § 841. In the absence of a written notice of denial, the request is deemed to have been denied 90 days later. 36 M.R.S.A. § 842. This action for review of the denial was commenced on January 4, 1973, well within the time limits fixed by M.R.C.P., Rule 80B.

*The Availability of the Open Space Land Procedure to Readfield Land Owners in General in 1972*

■ The Referee's interpretation of the statute led him to the conclusion that the preparation of a comprehensive plan

for a municipality is not a prerequisite to a land owner's qualifying for open space classification. He also found that operation of the statute was not postponed by the unavailability of an anticipated schedule of current use values to be recommended by the State Tax Assessor. The local assessors, he held, were left to exercise their statutory authority to determine current use value of a particular parcel in their own best judgment, as they would have done ultimately had they received the benefit of the State Tax Assessor's recommendations.

We agree.

### The Plaintiff's Entitlement to Open Space Classification

The plaintiff's land surrounds and includes a basin-like area which is the watershed for the pond. (Part of this land is in the town of Winthrop and this action does not concern it.) The area in Readfield contains about 600 acres of forest land and swamp. The wooded area is cut selectively to maintain maximum water retention. There are no buildings on the property except two tool sheds. The land is enclosed by a fence and public access is not allowed with the exception of guests of the State Forestry Department and other ecology groups who are permitted to visit the land to observe its management. The water from the pond is one of the sources of the District's water supply.

P.L. 1905, chapter 360, as amended by P.L. 1929, chapter 120, prohibited bathing and fishing in and boating and ice cutting on Carleton Pond and the construction of buildings which are apt to pollute its waters. In 1931, by Act of the Legislature, this entire tract of plaintiff's land became a game preserve (P.L. 1931, ch. 128) and it is still burdened by this status. 12 M.R.S.A. § 2101. The taking of any wild bird, wild animal or fish on the land or the pond

is prohibited by the Act. The State Fish & Game Department personnel have a key to the gate and occasionally take fish from the pond for stocking elsewhere.

These facts were presented to the Referee at hearing where he also learned from the defendant assessors that they rejected the plaintiff's request for open space status because the public access to the land was not permitted and because the plaintiff was enjoying a profitable use of the property. This property is listed as lots 41, 42, 43A on Map #7 and 10 on Map #3 on the tax books of the town. No issue is raised as to lots 41, 42, 43A as they are valued at less than the plaintiff concedes their correct value to be. Lot 10 contains the 300 acres immediately surrounding the pond. It includes land on some two miles of shore frontage which the assessors considered as representing 50 potential lots of 200 feet by 200 feet valued at $2500.00 each.[2] The assessors regarded the limitations upon the use of this property as being self-imposed and valued the property upon the land's *potential* use which was, in part, as valuable residential-recreational property.

The Referee held that on the facts presented, the plaintiff's land was entitled to open space land classification at the time of its assessment in 1972 because it

> "was made a Game Preserve by Ch. 128 P & S L 1931 and is within the 'Readfield and Winthrop Game Sanctuary' so designated in 12 M.R.S.A. Sec. 2101 and that the area preserves wildlife within the meaning of 36 M.R.S.A. Sec. 586 Paragraph 2D."

Thus, he held, Lot 10 should have been valued on the basis of its current limited use. The only evidence presented to him on value based on the current use was that of the plaintiff's appraiser who considered the limitations on its use and gave it a value of $80.00 per acre. The Referee recom-

---

2. One hundred ninety acres of this Lot 10 were valued as woodland at $30.00 per acre and the remaining 60 acres as wasteland at $10.00 per acre.

mended that judgment be entered for an abatement consistent with those findings.

The Referee's conclusion that the land was entitled to open space classification was based upon its statutory dedication as a game sanctuary and his indisputable conclusion, based upon undisputed facts, that its restricted use "preserves wildlife".

The Referee's report was accepted by a Justice in the Superior Court. He ordered a judgment abating the tax on Lot 10 to a figure representing the application of the mill rate to this $80.00 per acre valuation (plus $460.00 valuation of the buildings).

In reviewing the Justice's acceptance of the Referee's report we are not called upon to decide the extent of the Assessor's discretion or that of a Planning Board to accept or reject land as appropriate in type and location for open space classification. The Legislature has specifically designated this land as a wildlife sanctuary by 12 M. R.S.A. § 2101 [3] and, in unmistakable language of reference in 36 M.R.S.A. § 586(2), includes this, and other sanctuaries named in Title 12, as open space land.

■ The defendants' contention that the District's land remains a game preserve only so long as the District chooses to keep it fenced—thus self-imposing the restrictions on its use—finds no support in the statutory language which relates the fencing only to prosecutions for trespass.

■ Neither do we find convincing the defendants' assertion that the District should not be allowed open land status as a preserve while it continues to make a beneficial use of the property. We see no possibility that the Legislature intended that acceptance of open space status must be accompanied by a renunciation of even those uses consistent with that status. Such a requirement certainly could not be expected to encourage the preservation of such open space tracts close to metropolitan areas, a stated purpose of the Act.

■ We conclude that by legislative fiat the plaintiff's land was entitled to open space status.

■ It necessarily follows that assessment of the value of the land should have been made on the basis of the current use permitted by the statutory restrictions and that the assessors made an erroneous application of law when they used potential unrestricted use as a standard. *Frank v. Assessors of Skowhegan,* Me., 329 A.2d 167 (1974). The Assessors' erroneous application of law resulted in a judicially cognizable overvaluation of the property to an extent determined by the Referee upon substantial evidence. The Justice in the Superior Court was not in error in ordering an abatement based upon the Referee's report.

The entry will be:

Appeal denied.

All Justices concurring.

3. "Readfield and Winthrop Sanctuary: No person shall at any time hunt, chase, kill, destroy or catch any wild bird, wild animal or fish in or upon the waters of Carleton Pond, so called, in the Towns of Readfield and Winthrop in the County of Kennebec, or within the lands of the Augusta Water District adjacent to said pond and located in said Towns of Readfield and Winthrop, now owned or which may be hereafter acquired by said district in furtherance of its chartered purposes. The penalty for the violation of any provision of this paragraph shall apply only to such lands as are or may be hereafter fenced. Nothing herein shall prevent the necessary uses of said Carleton Pond by the Augusta Water District."