**THE COLONIAL PRESS, INC.**
v.
**DEPARTMENT OF REVENUE**

No. 93134

Appellate Tax Board
Trial Court of the
Commonwealth of Massachusetts

**June 23, 1982**

James C. Donnelly, Jr., Esq., counsel for appellant.
Joseph L. Hachey, Jr., Esq., counsel for appellee.

This is an appeal under the formal procedure under G.L. c. 62C, sec. 39 from the refusal of the appellee to abate sales and use taxes assessed under c. 64H and 64I for the period February 1972 through July 1976.

These findings of fact and report are made pursuant to a request by the appellant in accordance with the provisions of G.L. c. 58A, sec. 13, as amended, and Rule 32 of the Rules of Practice and Procedure of the Appellate Tax Board.

## FINDINGS OF FACT AND REPORT

Appellant's petition claimed that the taxes assessed under G.L. c. 64H and 64I should be abated insofar as they related to the purchase of supplies, materials, machinery and parts by the appellant, which was a printing company, on the theory that those purchases were exempt from taxation under G.L. c. 64H, secs. 6(r) and (s). A second contention was raised by the appellant that the taxes had been assessed more than three years after the date on which the sales and use tax returns were filed and due, and no written consent to extend the time for the assessment of said sales and use taxes was obtained by the appellee.

The appellant waived the first claim for abatement and admitted that it was subject to the taxes assessed. Thus, the case went forward on the only issue remaining, namely, whether the statute of limitations prevented the assessment of all taxes beyond three years back of the date of assessment.

The appellant introduced into evidence copies of only the first and last tax return, namely for the period February 1972 and May 1976 as Exhibit 1. A 17-page exhibit consisting of copies of Notices of Intention to Assess was introduced by the appellant as Exhibit 2. Exhibit 3 are the Notices of Assessment for the period from February 1972 through May 1976 by which use and sales taxes in the amount of $116,157.20 for the period February 1972 through and including July 1976 was assessed on or about March 18, 1977. Appellant filed applications for abatement on or about May 23, 1977, which were refused by the appellee on or about August 26, 1977 and the appellant filed a timely appeal with this Board on October 21, 1977.

After introducing his exhibits, counsel for the appellant, having admitted that taxes assessed as far back as March 20, 1974 were valid, stated that his exhibits constituted a **prime facie** case warranting an abatement and he introduced no witnesses or further evidence to support his claim for that abatement.

During a colloquy between counsel, it became apparent that counsel for the appellant was taken by surprise shortly before the hearing by the production by the appellee of what appeared to be four separate consents to extend the period within which the Commissioner could assess the taxes in question. The appellant then for the first time questioned the authority of the signatories to these consents to bind the appellant. It seems clear to the Board that this issue as to the authority to sign the consents was not intended by the appellant to be raised and was not raised in the appellant's petition.

The appellee went forward with its case and introduced three witnesses and the four alleged consents, as well as an audit report, an ''Agreement of a Representative Test,'' the appellant's

corporate excise tax return for fiscal 1976 as well as an affidavit.

With respect to the validity of the consents, the Board found the facts to be as set forth below.

A document entitled "Consent Extending The Time For The Assessment of Sales And/Or Use Taxes," dated February 10, 1975, and bearing the corporate seal of the Colonial Press, Inc. provides in substance that the Colonial Press, Inc., located at 16 Green Street, Clinton, Mass. 01510, and the Commissioner "consent and agree" that sales and use taxes "for the taxable periods ending February 20, 1972 thru July 31, 1972 may be assessed at any time on or before July 31, 1975." At the bottom the name of the taxpayer, "The Colonial Press, Inc." is printed in pen, below which appears the typewritten words and handwritten signature of Donald D. Conant. Below his name appears the words "Authorized Representative." Below that appears the typewritten words "Commissioner of Corporations and Taxation by Charles Avakian." There is also a written signature of Charles Avakian below which appears the words, "Authorized Official." The form at the bottom of the page also has directions about who may execute the form.

A second consent on a similar form is dated July 8, 1975 and extends the period within which the Commissioner may assess the taxes to December 31, 1975. The seal appears and signatures are substantially the same. A third consent, dated November 17, 1975 extends the time for assessment to September 30, 1976 and is signed and sealed in the same manner, except that the authorized representative of the appellant is signed Carl J. DiPalito. A fourth consent, dated August 20, 1976, extends the period for the assessment of the tax to March 31, 1977 and is signed and sealed in the same manner as the third by Carl J. DiPalito, but this time he is designated as "Controller," and Charles Avakian's name is typewritten only.

Although the record is somewhat confused with respect to the admission into evidence of this last consent, the Board ultimately received all four consents into evidence over the objections of the appellant, who challenged the authority of the persons purporting to represent the appellant and the fact that the August 20, 1976 consent did not possess a handwritten signature of Charles Avakian. The latter testified that the first three consents were definitely signed in his presence, but that without his diary he could only say that he was pretty sure that the fourth document was also signed in his presence.

Mr. Avakian, a principal tax examiner in the Department of Corporations and Taxation, who had conducted 200 to 300 audits in his experience, audited the returns of the appellant. He went to the offices of the appellant and was greeted by a receptionist. He asked to speak to the treasurer or the controller. He was introduced to Mr. DiPalito who said he was the controller and the receptionist called him the controller. Mr. Avakian also spoke with a Mr. Ferrella who was introduced to Mr. Avakian by Mr. DiPalito as the "assistant treasurer." Also an employee acting in the capacity of an accountant by the name of Mr. Still told Mr. Avakian that Mr. DiPalito was the then controller.

The appellant's 1976 corporate excise tax return was introduced into evidence and in answer to the question "as to who had custody of the corporation's books," the name "C. J. DiPalito, Controller" appears. The return is signed by "J. R. Ferrella, Assistant Treasurer."

An Assistant Chief of Bureau for the Bureau of Corporations was asked to make a search for tax returns filed by the appellant. Older returns were not readily available since they were in storage, but he testified that returns for the first quarter 1975 through the third quarter of 1975 were signed by "Donald W. Conant, Controller." The returns for the first quarter of 1976 through the third quarter of 1976 were signed by "Carl J. DiPalito, Controller," and an affidavit with a

correction of the year 1973 to 1976 was admitted in evidence as Exhibit G.

In addition to the consent forms, the same persons signed sales and use tax returns, an "Audit Report," an "Agreement To Use Test Period," and "Corporate Excise Tax Returns."

Insofar as it was a question of fact and for the reasons stated hereinafter in our opinion, the Board found that the appellant was bound by the consent forms in evidence. Thus, the assessments were found to have been timely made and the Board refused to grant an abatement.

## OPINION

Before reaching the chief issue as ultimately raised by the appellant, the Board first addresses the matter of jurisdiction in this case.

The filing of a valid and timely tax return is a condition precedent to the Board's granting of an abatement. Such returns have great materiality to the controversy because the returns would indicate the amount of any abatement due, if any, and is the basis for determination of the Board's jurisdiction. Rule 22 of the "Rules of Practice and Procedure of the Appellate Tax Board" requires the introduction into evidence by the appellant of all such tax returns.

In the case under consideration here, no tax returns were introduced for the periods in question except for the first month. The Board was unable to determine it had jurisdiction with respect to the other months. It follows that the appellant is disqualified from receiving any abatement for the taxable periods for which no tax return was introduced in evidence because of failure of the appellant to comply with this rule.

The appellant has the burden of proving the Board's jurisdiction and the parties cannot by agreement confer jurisdiction on this Board. **Board of Assessors of Boston v. Suffolk Law School,** 295 Mass. 489, 495.

This leaves open for the Board's determination whether or not the appellant is entitled to an abatement for the one month now left open, being

February 1972 for which a return was introduced and is in evidence under Rule 22.

Turning then to the chief issue remaining, as agreed to by the appellant, the question is whether or not the appellee made a timely assessment for the period in question on the basis of the "consents" in evidence which purportedly extended the time for assessment.

The appellant, having introduced documentary evidence to show that the assessment for the period in question was made more than three years after the tax return was filed, then argued that the burden of proof shifted to the appellee to prove that there was a written consent to extend the time for assessment and that any signatory had authority to bind the appellant. The appellant cites G.L. c. 62C, secs. 26 and 27 and Leach and Liacos, "Handbook of Massachusetts Evidence" (4th Ed.) page 50.

The Board disagrees. Generally the burden of proof is on the appellant. **Willet v. Rich,** 142 Mass. 356, 357; **Staples v. Commissioner of Corporations & Taxation,** 305 Mass. 20, 26. The assessment by the appellee is presumed to be valid in the first instance. **Schlaiker v. Great Barrington,** 365 Mass. 243, 245 and cases cited.

The defense of the statute of limitations is in the nature of an affirmative defense. G.L. c. 62C, secs. 26 and 27 must be read together as part of one taxing procedure. These two sections could have been written in one section since they cover the same subject matter; i.e., the time within which an assessment can be made. The two sections together constitute the statute of limitations. It cannot be said as a universal fact that an extension under section 27 is purely for the benefit of the appellee as contended by the appellant. Many times an extension is for the mutual benefit of the parties. Thus, the rule is that there is a 3-year limitation on assessments provided the 3-year period is not extended by agreement of the parties.

It has been said that taxation is an intensely practical matter. Certainly, its

administration is. It appears to the Board that this is a case in which that principle has an important application with respect to the burden of proof. Under the circumstances here where the appellant is denying the authority of the person who signed the alleged extension forms, we would be placing an unwarranted and undue burden on the appellee to prove the authority questioned here. The appellant had all the necessary evidence readily and easily available at no inconvenience and yet suppressed that evidence and produced no witnesses. The appellee, on the other hand, has thousands of tax returns and related documents filed monthly, quarterly and annually all bearing signatures supposedly bearing the signature of the taxpayer or his authorized agent. Generally, the proper authority to sign and file such documents which appear regular on their face must be presumed. The examination and auditing of tax returns would be an impossible task if the appellee were required in the first instance to make an extensive investigation and determination of the authority of persons signing returns. It could be such a time-consuming task as to cause the whole system to break down. If proper authority is lacking, it should be incumbent on the taxpayer to raise and prove that lack of authority.

An initial effort is made to insure the validity of the consents and authority of persons signing by the directions referred to on the form. However, to demand that the department must go further to verify the various facts underlying proper authority clearly is an unreasonable requirement for the department. There is a possibility for all manner of mistake and fraud involved which the department should not be required in the first instance to discover as a condition to making an assessment.

The Board concluded then, that it is a fair and reasonable requirement that, at least under the circumstances in this case, the appellant should have the burden of proof that the persons who signed the consents did not have authority to do so. See "Rules of Practice and Procedure of the Appellate Tax Board," Rule 37.

The appellant cites Leach and Liacos, **supra,** as authority for the proposition that the appellee had the burden of proof. However, it is pointed out that it appears to the Board that, for the most part, this is a case in which the appellant is the party who (1) initiated the suit, (2) changed the status quo, (3) asserts the affirmative proposition, (4) asserts the unlikely proposition, (5) has better access to the evidence, (6) by winning will cause socially undesirable results. The undesirable result being that a taxpayer escapes paying his fair share of taxes admittedly due by means of the suppression of evidence. According to Leach and Liacos, supra, page 44, the six enumerated items are matters for consideration in placing the burden of persuasion on the appellant. Thus admitting that the burden of proof on certain issues may shift in the trial of a case, the Board ruled that on the basis of those considerations the burden regarding authority of the signatories in this case should not shift to the appellee.

However, even assuming the burden of proof with respect to authority of the signer was on the appellee, the Board ruled that the appellee sustained that burden.

The appellant correctly argues, with a citation of cases, that the act and declaration of a person do not prove his authority as an agent. However, authority can be created by ratification and adoption of such acts and declarations.

The ratification of an agent's act may be accomplished through silence, inaction, acquiescence, inconsistent conduct, accepting benefits and in other ways. **Simonelli v. Boston Housing Authority,** 334, 438; **Brewer v. First National Bank,** 202 VA 807; **Bayley v. Bryant,** 41 Mass. 198; **Seavey, Ratification By Silence,** 103 UN of PA L.R. 30.

From the evidence and inferences made by the Board from the evidence, we found

that over a period of time the acts of filing tax returns and other documents signed by the persons referred to in evidence had to be or should have been within the knowledge of the appellant. The latter accepted all the benefits of said filings and has acquiesced in the action of those persons. The Board finds that there was ample evidence of the ratification of the authority of the signatories to the consent forms.

Furthermore, since the returns and documents signed by the individuals were taken advantage of by the appellant and have been accepted and relied upon by the appellee, the appellant should be estopped from asserting at this time that the signatories lacked authority.

In this matter the appellant may be faced with a very serious dilemma. If the appellant is stating that these signatories had no authority to sign tax returns and related documents, then returns signed by them were not valid and no statute of limitation applies. G.L. c. 64H, sec. 15(e); c. 62C, sec. 26(d). On those facts the assessment was timely. On the other hand, if these persons had the authority, then the consents for the extension of time must be valid and again the assessment by the appellee was timely.

Finally there is a consideration which in the opinion of the Board is dispositive of this matter. The issue of the authority of the signatories of the consent forms was first raised at the hearing and was not raised in the appellant's petition upon appeal. Therefore, the question of authority is not open on this appeal. G.L. c. 58A, sec. 7 provides, ''The Board shall not consider, unless equity and good conscience so require, any issue of fact or contention of law not specifically set out in the petition upon an appeal or raised in the answer.'' This is hardly a case crying for relief in ''equity and good conscience.''

Upon the basis of the above analysis of law and facts, the Board was of the opinion that the appellant did not sustain its burden of proof that it was entitled to an abatement which therefor was denied by the Board.

The appellant's late-filed requests for rulings of law are disposed of in this report.

Our decision for the appellee was promulgated July 6, 1981.

**APPELLATE TAX BOARD**
**By John P. Mulvihill, Chairman**

A True Copy

**Attest: Richard B. Willis**
**Clerk of the Board**